Jose Luis **GONZALEZ** and Francisco Gonzalez, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

**No. EP–84–CA–21.**

United States District Court, W.D. Texas, El Paso Division.

Jan. 8, 1985.

Walter L. Boyaki, El Paso, Tex., for plaintiffs.

Mark Greenberg, Asst. U.S. Atty., El Paso, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

This is an action for damages under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. This Court has jurisdiction under the provisions of 28 U.S.C. § 1346(b). A non-jury trial was held on December 20 and 21, 1984. The Court's findings of fact and conclusions of Law are incorporated in this memorandum opinion.

Plaintiff Jose Luis Gonzalez is the son of Francisco and Margarita Solis Gonzalez. At the time of the transactions made the basis of this suit, he was 18 years of age and lived in his parents' home at 269 Pasodale, in the Lower Valley area of El Paso, Texas. Jose Luis was enrolled in a technical school, and also worked an evening shift at Azar Nut Company where he was employed as a nut roaster. His father, Plaintiff Francisco Gonzalez, was retired from the United States Air Force, and he and his dependents were entitled to receive medical services from the army hospital known as William Beaumont Army Medical Center.

Sometime in the morning of May 27, 1982, Plaintiff Jose Luis Gonzalez began feeling pain in his abdominal area. As the day went on, the pain grew worse. Sometime in the afternoon or evening, the Plaintiff took two Pepto Bismol tablets, but they did not afford relief. Plaintiff apparently went to work at Azar, and worked his full evening shift. After work, he went home and went to bed. About 4:00 a.m., he awoke feeling severe pain. He awoke his mother, and requested that she take him to the hospital. Mrs. Gonzalez dressed herself and drove Jose Luis to the emergency room of William Beaumont Army Medical Center. According to the emergency room records, (Def. Ex. B), Jose Luis arrived at the emergency room at 4:50 a.m. on May 28, 1982.

According to records prepared by the emergency room personnel, Jose Luis complained at the time of his admission of abdominal pain since nine o'clock the previous morning. He specifically complained of pain in the right lower quadrant of his abdominal area. He stated that eating made the pain worse, and that nothing he had tried had made it better. He also stated that his last bowel movement had occurred a few hours before. He was conscious and alert, his pulse rate was 78, and his blood pressure, temperature, and respiration were all within normal limits. The emergency room physician who examined the Plaintiff was an intern named Edwina J. Popeck. Dr. Popeck made a complete physical examination in an effort to diagnose the Plaintiff's condition. She observed that Jose Luis did not appear to be severely ill. He moved around the examination room without apparent difficulty; his skin did not appear to be flushed or clammy, and his eyes were not glazed. He was not moaning or groaning spontaneously. He gave a history of pain in the right lower quadrant of his abdomen. He did not complain of nausea, diarrhea or vomiting. He stated that his last bowel movement had occurred a few hours before. There was no distention or discoloration of the abdomen and no abnormalities visible. Gurgling noises in the bowel could be detected with the stethoscope, indicating that the intestine was at work. Palpation of the abdomen resulted in a finding of tenderness in the right upper quadrant of the abdomen. No tenderness was detected in the right lower quadrant. There was no rebounding, and guarding was minimal. Such guarding as Dr. Popeck did detect was localized in the right upper quadrant. She found no guarding in the right lower quadrant area. She conducted some leg manipulation tests, which were also negative. Rectal examination for tenderness, masses, and blood in the stool also proved negative. When Jose Luis was asked to jump up and down on the floor of the examining room, he did so without any apparent increase in pain. Dr. Popeck then ordered x-rays and laboratory tests. The only positive finding on the x-ray was the appearance of two opaque tablets in the Plaintiff's ascending colon, which apparently were the undissolved Pepto Bismol tablets taken by the Plaintiff approximately twelve hours earlier. The blood test revealed an elevated white count of approximately 16,600, but the laboratory breakdown of the different kinds of white cells found failed to indicate the presence of an acute infection. After considering all of her findings, Dr. Popeck ruled out a diagnosis of appendicitis and diagnosed the Plaintiff's condition as gastritis. She instructed him to go home and take analgesics for the pain, to continue his regular diet, and to return to the emergency room if the pain worsened during the day. Jose Luis was discharged from the emergency room at approximately 6:15 a.m.

Plaintiff Jose Luis Gonzalez did not attempt to go to school or work on May 28; he rested at home all day. The pain continued without noticeable abatement. About four o'clock in the afternoon, Jose Luis advised his mother that the pain had worsened. At that time, Mrs. Gonzalez was busy preparing dinner, and she did not immediately take Jose Luis to a doctor or hospital. When Jose Luis' complaints continued and escalated, Mrs. Gonzalez telephoned the emergency room at William Beaumont at about 6:30 or 7:00 p.m. She was instructed to bring Jose Luis back to the hospital. Instead of taking Jose Luis immediately, however, Mrs. Gonzalez proceeded to attempt to locate her husband, Plaintiff Francisco Gonzalez, who was in a bar somewhere. By the time Mr. Gonzalez was located, it was approximately 9:00 p.m. Mr. and Mrs. Gonzalez then proceeded to drive Jose Luis back to William Beaumont Army Medical Center, arriving at the emergency room at about 9:15 p.m.

While Mr. Gonzalez parked the car, Mrs. Gonzalez assisted Jose Luis into the emergency room. She told the person at the desk that she had telephoned earlier, and had been instructed to bring Jose Luis to the emergency room. Jose Luis was told to proceed to the records office, and obtain

his medical records before returning to the emergency room. On the way to the records office, Jose Luis' pain became so severe that he was unable to walk. His mother obtained a wheel chair for him, and wheeled him to the records office and back to the emergency room where his medical records were given to the receptionist. According to the undisputed testimony, Jose Luis and his parents proceeded to wait approximately an hour to an hour and fifteen minutes without being seen by any emergency room personnel. During this period, Jose Luis was doubled over with pain and holding his abdomen. At approximately 10:30 p.m., Francisco Gonzalez inquired as to when Jose Luis would be seen by a doctor. The receptionist told him that the doctors were all busy, and that quicker service might be obtained by going to another hospital. His parents then helped Jose Luis out to the car and drove him to Sierra Medical Center, a private hospital in El Paso, Texas located fairly near William Beaumont Army Medical Center. The drive to Sierra took ten to fifteen minutes. Jose Luis was seen in the Sierra emergency room at approximately 10:45 p.m. The diagnosis was acute appendicitis with possible rupture of the appendix and peritonitis. He was admitted to the hospital immediately and a surgeon was contacted. Less than two hours later, surgery was performed by Dr. Ruben Ramirez. Surgery disclosed a ruptured appendix with contamination in the abdominal cavity and peritonitis.

Jose Luis Gonzalez remained in Sierra Medical Center for approximately thirteen days. He was in considerable pain at times, and Demerol and Dilaudid were prescribed. He recovered well except for an abscess in the surgical incision, which had to be drained. He was later seen by Dr. Ramirez in office visits, and on July 12, 1982, was pronounced completely recovered. According to Dr. Ramirez, in reasonable medical probability Jose Luis will suffer no permanent disability. His father, Plaintiff Francisco Gonzalez, paid the hospital bill and the fees of the surgeon, the anesthetist, the radiologist, and a consult-ing physician. These medical and hospital bills totaled $10,644.50.

■ Under the Federal Tort Claims Act, the Government is liable in damages to an injured party for injuries arising from a negligent act or omission by its employees if a private person would be liable under the same circumstances under the law of the state where the act or omission occurred. 28 U.S.C. § 1346(b), 2674. In a suit for medical malpractice, the Plaintiff has the burden of proving that the treatment complained of was negligent, and that such negligence was a proximate cause of the injury. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949). In the instant case, Plaintiffs contend that two negligent acts or omissions on the part of Defendant's medical personnel proximately caused injury to Jose Luis Gonzalez: (1) the negligent failure to diagnose his condition as acute appendicitis during his emergency room visit at 4:50 a.m., on May 28, 1982, and (2) failure to admit him to the hospital for surgery at the time of his second visit to the emergency room at 9:15 p.m., on May 28.

■ With respect to the Plaintiffs' claim of negligent failure to diagnose, it is well settled that a physician or other health care provider owes a duty to his patient to exercise that degree of skill and care ordinarily employed under the same or similar circumstances by other practitioners in the field in the same or similar communities. *Bowles v. Bourdon, supra; Speer v. United States,* 512 F.Supp. 670, 677 (N.D.Tex. 1981), *aff'd* 675 F.2d 100 (5th Cir.1982). The burden is on the plaintiff to establish by expert medical testimony that the act or omission of the accused physician fell below the community standard of care and was negligent. *Bowles v. Bourdon, supra; Eckert v. Smith,* 589 S.W.2d 533, 536 (Tex. Civ.App.—Amarillo 1979, writ ref. n.r.e.). In this case, the Plaintiffs have failed to sustain their burden of proving by a preponderance of the evidence that Dr. Popeck was negligent in failing to diagnose acute appendicitis on Jose Luis' first visit to the William Beaumont emergency room. In

terms of signs and symptoms, his was a very atypical case of appendicitis. Although he complained initially of right lower quadrant pain, the physical examination conducted by Dr. Popeck detected tenderness only in the right upper quadrant. Guarding and rebounding were nonexistent or minimal. Jose Luis did not complain of anorexia, which means loss or absence of appetite; on the contrary, he indicated that he had been hungry and had tried to eat. Nothing else in the extensive physical examination conducted by Dr. Popeck indicated the presence of appendicitis. The only thing in the x-rays and laboratory examinations consistent with appendicitis was the elevated count of white cells. Even there, the types of white cells found by laboratory analysis to be present were not consistent with appendicitis. On the whole, at 4:50 a.m. on May 28, Jose Luis presented a very confusing set of symptoms. It did not fall below the standard of care in El Paso County, Texas to send him home to rest under his parents' supervision, with instructions that he return to the emergency room if the pain worsened during the day.

 On the other hand, the Plaintiffs have sustained their burden of proving by a preponderance of the evidence that the care, or lack thereof, furnished to Jose Luis Gonzalez on his second visit to the emergency room fell far below the standard of care. The evidence as a whole establishes that, in reasonable medical probability, Jose Luis' appendix ruptured at approximately 4:00 p.m. on May 28. By the time he appeared at the William Beaumont emergency room between nine and nine-thirty that evening, he was almost certainly suffering from peritonitis in addition to the appendicitis. It is well settled in Texas that liability on the part of a hospital may be predicated on the refusal of service to a patient in the case of an unmistakable emergency. *Valdez v. Lyman-Roberts Hospital, Inc.*, 638 S.W.2d 111, 114 (Tex. App.—Corpus Christi 1982, writ ref. n.r.e.). The conduct of Defendant's emergency room personnel in this case amounted to a constructive refusal of service to the Plaintiff. Jose Luis Gonzalez was in obvious acute distress. His medical records, which were available to Defendant's emergency room personnel, reflected that he had been examined in the same emergency room some fifteen hours before, complaining of abdominal pain. Approximately two hours before, his mother had telephoned the emergency room, and had been instructed to bring her son. One of the Defendant's medical experts, Dr. Samuel Coleridge, testified that the standard of care applicable to hospital emergency rooms required that an incoming patient be screened in some fashion within no more than thirty minutes after his arrival. In the instant case, Plaintiff Jose Luis Gonzalez waited one hour and fifteen minutes, and was never examined or screened in any way by the emergency room personnel. Defendant is clearly liable for the negligence of its emergency room personnel in failing to examine and treat Plaintiff Jose Luis Gonzalez on his second visit to the emergency room.

It next must be determined whether Defendant's negligence in connection with the second visit proximately caused any injury to the Plaintiff. The Court finds that it did proximately cause such injury in two respects: (1) it caused the Plaintiff, Jose Luis Gonzalez, at least an additional hour of severe pain, suffering, and mental anguish, and (2) it caused the Plaintiff to incur substantial charges for his treatment by private physicians and hospitals.

With respect to the first point, Jose Luis Gonzalez should have been seen almost immediately upon his second presentation to the emergency room. His medical records showed that he had been seen that very morning by Defendant's emergency room personnel, and that they had instructed him to return if the pain increased. His mother had telephoned the emergency room two hours before, and had been verbally instructed to bring Jose Luis to the emergency room for examination. Those facts, coupled with his obvious appearance of distress upon his arrival, should have resulted in the immediate examination of Jose Luis Gonzalez. Instead, he was required to wait

more than an hour, and was never examined at all. The Court finds that for the pain, suffering, and mental anguish experienced by Plaintiff Jose Luis Gonzalez between 9:15 p.m. and 10:30 p.m. on May 28, 1982, he is entitled to an award in the amount of $2,500.00.

With respect to the second point, it seems clear that, but for the negligence of Defendant's emergency room personnel, the Plaintiff would have been admitted to William Beaumont Army Medical Center on the evening of May 28, 1982 for an appendectomy. According to the trial testimony, his hospitalization at William Beaumont would have cost him a grand total of $3.00 a day. Assuming that his hospital stay would have been thirteen days, the same length of time he spent in Sierra Medical Center, the hospital and medical services would have cost him a total of $39.00. Since he was not admitted to William Beaumont, the Plaintiff incurred reasonable and necessary hospital expenses in the amount of $8,730.50 and reasonable and necessary medical and surgical expenses in the amount of $1,914.00, for a total of $10,-644.50. His measure of damages is the difference between the costs actually incurred, and the costs which would have been incurred had he been duly admitted to William Beaumont. The Court finds this sum to be $10,605.50.

█ The Court finds that the Plaintiff is not entitled to recover with respect to any other elements of damages. There is no impairment of future earning capacity; Jose Luis has made a complete recovery and has incurred no permanent disability. His claims of lost wages, damage to credit, property repossessed and debts incurred do not relate to the Defendant's negligence found by the Court in this case. There is no claim that the Defendant caused the appendicitis of Jose Luis Gonzalez. The Court has previously found that the failure to diagnose Plaintiff's condition as appendicitis in the early morning visit of May 28 was not negligent. The medical evidence establishes that perforation of the Plaintiff's appendix probably occurred at approximately 4:00 p.m. on May 28. The peritonitis was caused by the rupture or perforation of the appendix. Therefore, had the Plaintiff been admitted to the hospital and treated immediately at William Beaumont Army Medical Center at 9:15 p.m. on May 28, he still would have experienced the lengthy hospitalization and period of recovery which he claims caused his loss of employment and other damages. Therefore, he has failed to establish by a preponderance of the evidence that the acts or omissions of the Defendant proximately caused these injuries.

█ The father of Jose Luis Gonzalez, Francisco Gonzalez, also purports to be a Plaintiff in this case. Defendant contends that he has no standing to be a plaintiff. The Court agrees. Although it is true that Mr. Gonzalez paid the hospital and medical bills for his son, he was under no legal obligation to do so. On May 28, 1982, Jose Luis Gonzalez was 18 years of age. Under Texas law, his father no longer owed him a legal duty of support. See Tex.Rev.Civ. Stat.Ann., Family Code, Sections 4.02, 12.-04. In paying the bills for Jose Luis, therefore, Francisco Gonzalez was a mere volunteer, and he has no legal standing to recover these sums from the Defendant. However, this in no way prevents or hampers the right of Plaintiff Jose Luis Gonzalez to recover from the Defendant his reasonable and necessary medical and hospital expenses incurred as the proximate result of the Defendant's negligence. The Court has already found that he is entitled to recover in this respect.

█ Francisco Gonzalez also seeks to recover damages from the Defendant for his own emotional distress which he claims was proximately caused by the Defendant's negligent failure to treat his son. See *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex. 1983) (allowing parents' recovery for mental anguish caused by wrongful death of minor child). The problem with Mr. Gonzalez' separate and independent claim for emotional distress is that it was neither pled in the Plaintiffs' complaint nor included in Francisco Gonzalez' administrative

claim to the Department of the Army. Both in the administrative claim and in the original complaint filed in this case, Francisco Gonzalez claimed the right to recover damages only with respect to the medical bills he paid for his son. It is well settled law that the administrative claim procedure described in the Federal Tort Claims Act, specifically 28 U.S.C. § 2675(a), is jurisdictional, and that only those claims presented to the appropriate administrative agency are cognizable in a tort action in this Court. *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir.1975); *Bush v. United States*, 703 F.2d 491, 494 (11th Cir.1983). In the instant case, Francisco Gonzalez has neither pled nor proved that he submitted to the Army any notice that he was claiming damages for his own emotional distress arising from the maltreatment of his son. Therefore, Francisco Gonzalez is not entitled to recover damages in this case.

In light of the foregoing discussion, the following orders should be entered.

It is ORDERED that Plaintiff Jose Luis Gonzalez do have and recover of and from the Defendant, United States of America, judgment in the amount of $13,105.50, with interest thereon at the legal rate as provided by law.

It is further ORDERED that Plaintiff Francisco Gonzalez take nothing by his suit, and that judgment be entered in favor of the Defendant, United States of America, with respect to the claims of Francisco Gonzalez.

It is further ORDERED that the Defendant pay the costs of suit herein incurred.