James **BAUER, M.D. and Victoria Radiological Associates,** Appellants,

v.

**Estle L. KING, Appellee.**

**No. 13–83–283–CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 31, 1985.

O.F. Jones, III, Jones & Whitaker, Victoria, Guy Allison, Corpus Christi, for appellants.

Alfred W. Ellis, Woodruff & Ellis, Dallas, for appellee.

Before NYE, C. J., and UTTER, J.

## OPINION

NYE, Chief Justice.

This is a medical malpractice case. Appellee, Estle King, brought suit against Dr. James Bauer and Victoria Radiological Associates, claiming that Bauer was negligent in administering radiation therapy after cancer related surgery. The jury found Bauer negligent and awarded Mrs. King damages. We reversed, holding there was no evidence showing Bauer had breached the standard of care, 674 S.W.2d 377. On Petition for Writ of Error, the Supreme Court, 688 S.W.2d 845, found that there was some evidence that Dr. Bauer was negligent and remanded the case to us for determination of the sufficiency point of error. We now reverse and remand the case for trial.

In considering the insufficient evidence point of error, we will follow the well established test set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The burden of proof in a medical malpractice case is on the patient to prove that the physician has undertaken a mode or form of treatment which a reasonable and prudent member of the medical profession would not have taken under the same or similar circumstances. *Hood v. Phillips*, 554 S.W.2d 160 (Tex.1977). Expert testimony is required to meet this burden. The medical standard must be established so that the fact finder may determine whether the doctor's acts or omissions deviated from the standard of care so as to constitute negligence. *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). An expert in a medical malpractice should first state what the standard of care for a specific treatment is and then state the facts which show what the defendant doctor did. *See Coan v. Winters*, 646 S.W.2d 655 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). Texas courts have recognized that physicians should be allowed to exercise their professional judgment in selecting a mode or form of treatment. *Hood v. Phillips*, 554 S.W.2d at 165. For instance, in *Hood*, the expert testimony characterized the treatment performed as unaccepted, controversial, not supported by medical evidence, ineffectual and one that had been abandoned. *Id.* at 166.

Mrs. King began radiation treatments in February 1978. She was involved in a "split course" treatment. The total dosage of radiation she received was 5,398 RADS. The total exposure to the spinal cord was approximately 4,650 RADS. After completing the therapy, Mrs. King experienced radiation myelopathy, which resulted in a complete paralysis of her lower body. She claimed that Dr. Bauer was negligent in treating her and that this negligence proximately caused her paralysis.

Dr. Joe Rector, Director of Radiation Therapy at St. Luke's Hospital testified that "the rule of thumb" that almost everyone around the country used was about 1,000 RADS per week divided into five treatments of 200 RADS per day until the desired dosage is received. He testified that the total dosage Mrs. Bauer received was not too much in general, but that it was too much for her. According to Dr. Rector, there is an individual variation in tolerance to radiation susceptibility.

Dr. Hubert Withers testified that Mrs. King was treated in a fairly standard fashion, receiving a dose of about 4,500 RADS, with a boost dose of about one thousand RADS. He said the total amount of radiation that the spinal cord can safely receive is between 4,500 and 5,000 RADS. He calculated that the total dose of radiation that Mrs. King's spinal column had received "was of the order of 4,500 to 4,700 RADS." He further testified that "Its generally believed that you can be quite safe going 4,500 RADS and probably quite safe going as high as 5,000 rads."

Dr. Vincent Collins testified that the "intermediate person" will carry "his radiation dosage as far as he thinks he can." He indicated that he believed the regimine followed by Dr. Bauer was in accordance with the general standard. He further testified that he believed Dr. Bauer took an additional precaution to adjust one treatment method in the final few treatments to spare

the spinal cord, by directing the beam in another fashion.

We now find that there was evidence through the testimony of Drs. Rector and Withers to establish a general standard that physicians use in determining the standard treatment that a patient is to receive when undergoing radiation therapy. We have considered and weighed all of the evidence, however, and find that the verdict of the jury was contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust.

While there was evidence that increased dosages per fraction increased the risk of myelopathy, the evidence presented was insufficient for the jury to conclude that Dr. Bauer's treatment was an unaccepted mode of treatment or not supported by the medical evidence. All of the medical experts testified that the total dosage that the patient received was within normal amounts. There was ample testimony that her treatment was fairly standard and that it was in accordance with the general standard. Appellant's point of error is therefore sustained.

The judgment of the trial court is REVERSED, and the cause is REMANDED for trial.