**Cynthia Hall URBACH, George I. Urbach, Jr., Veronica Shadrock and The Estate of George I. Urbach, Sr., Deceased, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 87-1581.

United States Court of Appeals, Fifth Circuit.

April 10, 1989.

Rod S. Squires, Waco, Tex., for plaintiffs-appellants.

Katherine L. Smith, Asst. U.S. Atty., Austin, Tex., Winstanley F. Luke, Asst. U.S. Atty., San Antonio, Tex., for defendant-appellee.

Before GEE, SNEED * and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The family of a mental patient who was killed while on furlough from a Veteran's Administration (VA) hospital sued the United States government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (FTCA). The claim was for medical malpractice. They now appeal the take nothing judgment of the district court. We affirm the judgment.

### Prior Proceedings

George Urbach, Sr. was involuntarily committed to a Veterans' Administration hospital in Waco, Texas, in December 1963 and diagnosed as a manic depressive. During his institutionalization, Urbach was periodically furloughed.

In February 1982, Urbach was given a furlough from the VA hospital. With the knowledge and assistance of the hospital staff, he planned a trip to Mexico City. While in Mexico, Urbach apparently accidently set fire to his motel room. He was arrested by Mexican officials and ultimately incarcerated in a Mexican prison. The district court found that while serving his

* Circuit Judge of the Ninth Circuit, sitting by designation.

sentence, Urbach was beaten to death by several unidentified fellow prisoners.[1]

The widow and adult children of George Urbach, Sr., sued the United States under the FTCA claiming medical malpractice resulted in Urbach's wrongful death. The district court in a bench trial found that allowing Urbach to travel to Mexico was a negligent action by the United States (acting through the Veteran's Administration). The district court nevertheless entered judgment for the government, holding that the survivors failed to prove a necessary element of liability under Texas law, causation. The finding of negligence is not challenged by the government on appeal. The issue before us is whether the negligence, under the law, was a cause of the death.

### The Causation Requirement

■ Because the negligent act occurred in Texas, Texas law governs the issue of liability. 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States*, 369 U.S. 1, 9–10, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). In a suit for medical malpractice, as in all negligence cases, Texas law requires that the plaintiff prove four elements in order to establish liability: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) actual injury to plaintiff, and (4) the only element critical to this case; was the breach a proximate cause of the injury? *Lanier v. Sallas*, 777 F.2d 321, 323 (5th Cir.1985); *Price v. Hurt*, 711 S.W.2d 84, 86 (Tex.App.—Dallas 1986, no writ).

■ Causation is a question of fact. In a bench trial it is reviewed under the clearly erroneous standard. *Sebree v. United States*, 567 F.2d 292, 293–94 (5th Cir.1978); Fed.R.Civ.P. Rule 52(a). The burden of proof regarding causation rests with the

plaintiff. *Gonzalez v. United States*, 600 F.Supp. 1390, 1393 (W.D.Tex.1985); *Bauer v. King*, 700 S.W.2d 650, 651 (Tex.App.—Corpus Christi 1985, no writ).

■ There are two elements of proximate cause under Texas law: foreseeability and cause in fact. *City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex.1987); *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 575 (Tex.1985). The district court held that the plaintiffs proved neither element.

### A. Foreseeability

■ "Foreseeability requires that the actor, as a person of ordinary intelligence, would have anticipated the danger that his negligent act created for others.... Foreseeability does not require that a person anticipate the precise manner in which injury will occur once a negligent situation that he has created exists." *City of Gladewater*, 727 S.W.2d at 517. Another formulation of the foreseeability test "is whether the negligent actor should have anticipated the risk to persons ... growing out of the negligent act or omission." *Saucedo v. Phillips Petroleum Company*, 670 F.2d 634, 637 (5th Cir.), *cert. denied*, 459 U.S. 839, 103 S.Ct. 87, 74 L.Ed.2d 81 (1982).

Evidence was presented by the survivors that Urbach had been previously furloughed, had committed minor crimes, and was subsequently re-committed to the Waco VA hospital, which he considered "home." The United States presented testimony, however, that he had previously been furloughed to travel to New York and California, where he checked into "a very nice hotel and [had] a good time" and then returned to the VA without incident. Fur-

---

1. There was some conflict concerning the cause of Urbach's death. The first doctor to perform an autopsy in Mexico stated that a severe concussion caused Urbach's death. A second doctor said bronchial pneumonia killed Urbach, perhaps allied with malnutrition and improper administration of fluids during Urbach's coma. Mexican authorities stated the official cause of death as pneumonia, but the trial court rejected this explanation, instead concluding that a beating by fellow prisoners led to Urbach's coma and death. This finding is not challenged on

appeal, and there is ample evidence to support it. The American Embassy officials were initially told by Mexican officials that Urbach had been in a fight but this story was later retracted. A guard and fellow American prisoners testified that Urbach was a problem prisoner and would provoke other prisoners. Urbach's facial bruises were not the sort acquired from a fall, contrary to the Mexican authorities' explanation. We therefore accept the trial court's finding on this point.

thermore, Urbach seemed rational about the trip to Mexico and had approached it in a business-like manner. The staff feared that if they had forbidden the trip or insisted that Urbach not travel to Mexico, he would have gone anyway—without the benefit of any planning or adequate funds. Once furloughed, he might go anywhere he pleased.

Thus, while the VA was found to have been negligent in allowing Urbach a furlough for the purpose of traveling to Mexico, the district court decided it could not have foreseen that he would die from being beaten by fellow prisoners in a Mexican jail. While Urbach had been in trouble on furlough before, there was no evidence presented that he had been involved in a violent altercation injurious to himself.[2] Urbach had been "classified as a fire hazard"; he smoked in bed and was careless. But he gave no indication of being an intentional fire-starter. The most the VA might have foreseen was that he could accidently start a fire which would injure himself. The prison beating was far beyond the bounds of any previous experience of Urbach's.[3] The district court found that the prisoners' actions were such that the VA could not have anticipated them.

Two Texas cases involving intervening acts by third parties support the conclusion that Urbach's death was not foreseeable. In *Wolf v. Friedman Steel Sales, Inc.*, 717 S.W.2d 669 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), the defendant left a tractor-trailer parked at a loading dock with the load unsecured. An unknown third person obtained the keys and drove the truck until the chains that should have secured the load severed the brake line.

The third party abandoned the truck on an unlit highway. Plaintiff collided with the truck and was killed. *Id.* at 671. The acts of the third party were held to be not foreseeable. *Id.* at 673–74.

Similarly, in *Taylor v. Southwestern Bell Tel. Co.*, 483 S.W.2d 330 (Tex.Civ.App.—El Paso 1972, no writ), the court upheld a summary judgment in favor of the defendant. The telephone company negligently laid a wire across the plaintiff's yard. Two boys who were mowing the yard, hung the wire from a tree so that it was a few feet off the ground. As Taylor's wife drove into the driveway, Taylor saw the danger and attempted to pull the wire down, but she struck the wire, and he was propelled through the air "like an arrow from a bowstring." The court held that the actions of the boys were not foreseeable. *Id.* at 331–32.

In those cases in which liability has been imposed despite the acts of third parties, there has been evidence that the defendant knew of the potential risk created by the third party's acts, hence the resulting tort was foreseeable. For example, in *Northwest Mall, Inc. v. Lubri–Lon Int'l, Inc.*, 681 S.W.2d 797 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), the plaintiff slipped in an oil puddle beside the defendant's booth in a shopping mall. The defendant did not discard oil used in demonstrations, leaving it in a container in the unlocked booth. An unknown third party later caused the spill. *Id.* at 800–01. The court upheld a jury verdict in favor of the plaintiff, citing evidence that the defendant knew that people roamed through the mall after hours and had vandalized the booth

2. A careful review of the record reveals that Urbach had been arrested twice for violent behavior, once for assaulting a police officer and resisting arrest in Waco on June 21, 1976 and once for making threats on September 1, 1970 in San Antonio. He had also apparently many years earlier broken his wife's nose. These incidents aside, the vast majority of Urbach's scrapes with the law involved bad checks and petty larceny.

3. Urbach's survivors claim that the VA "airmailed" him outside the jurisdiction in which it could help him, a fact which supposedly differentiates this furlough from Urbach's other ones.

Yet Urbach was not beyond assistance. Once he was arrested for allegedly burning his hotel room, Urbach's son went to Mexico but failed to offer to compensate the hotel owner or hire Urbach a defense attorney, although either action may well have kept Urbach out of jail. Furthermore, the survivors fail to explain why it should have been anticipated that Urbach would provoke someone to the point of beating him to death in Mexico but not encounter a similar mishap on the streets of an American city; there was no evidence that such violence was more probable in Mexico or in Mexican prisons.

once before. *Id.* at 803. In *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), the court upheld a jury verdict in favor of the plaintiff. In this case the court held that the manufacturer should have anticipated the failure of pilots and mechanics to inspect and properly maintain the rotor system manufactured by the defendant. *Id.* at 533–34.

In both of these cases, the torts complained of were foreseeable by the defendants because of prior experiences. Hence the third parties' intervening actions did not break the chain of causation, or become superseding. There is no evidence to suggest that the VA should have been aware of the danger to Urbach in this case. The trial court's finding that the acts of Urbach's cellmates were not foreseeable was not clearly erroneous.

### B. Cause in Fact

■ As is customary in federal district courts and state courts in Texas and elsewhere, a finding of lack of foreseeability is usually not treated as the end of the case. The issue of cause in fact is also considered, and we do so here.

The first factor to be considered in evaluating cause in fact is the proximity of the purported cause and the complained of effect. Creating a passive condition which merely makes the injury possible is not necessarily a cause in fact. "A prior or remote cause cannot be made the basis of an action for damages if it does nothing more than furnish the condition of giving rise to the occasion which made the injury possible...." *Jack Williams Chevrolet, Inc. v. Bentley,* 505 S.W.2d 421, 425 (Tex. Civ.App.—Fort Worth 1974, no writ).

Proximate cause (embracing both cause in fact and foreseeability) "is that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury.... It is a practical test, a test of common experience applied to human conduct." *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

A second factor to be considered under Texas law and tort law generally is whether an act or omission of a separate and independent agency was the immediate cause of the plaintiff's injury and was not reasonably foreseeable. Such an act generally destroys the causal connection between the defendant and the plaintiff's injury. *See Walker v. Burgdorf,* 150 Tex. 603, 244 S.W.2d 506, 509 (1952); *Galvan v. Fedder,* 678 S.W.2d 596, 598 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Couch v. Babb,* 423 S.W.2d 464, 466 (Tex.Civ.App.—Beaumont, 1968, writ ref'd n.r.e.).

It is of significant relevance in this case that Texas cases also hold that an intervening criminal act will break the chain of causation. *Garza v. United States,* 809 F.2d 1170, 1174 (5th Cir.1987); *Nixon v. Mr. Property Management, Inc.,* 690 S.W. 2d 546, 550 (Tex.1985); *Murphy v. City of Rotan,* 139 S.W.2d 134, 138 (Tex.Civ.App.—Eastland 1940, Dism.Judgm.Cor.)

The Restatement of Torts helps shed light on this issue:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created....

*Restatement (Second) of Torts* § 448 (1964).

The analysis in the Restatement (Second) of Torts supports the analysis of the Texas cases. In section 442 it sets out six elements that are relevant to determining whether an intervening force is a superseding cause:

> (1) whether the intervening force brings about harm that is "different in kind from that which would otherwise have resulted from the actor's negligence";
>
> (2) whether the chain of circumstances appears to be extraordinary;

(3) whether the intervening force operates "independently" of the situation created by the actor;

(4) whether the operation of the intervening forces is the result of a third person's act;

(5) whether the act of the third person is wrongful; and

(6) the "degree of culpability" of the third person for the wrongful act that "sets the intervening force in motion."

The Texas courts have accepted this analysis of the Restatement as in general correctly reflecting Texas law. *Humble Oil & Refining Co. v. Whitten*, 427 S.W.2d 313, 315 (Tex.1968); *Pioneer Natural Gas Co. v. Caraway*, 562 S.W.2d 284, 290 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.)

Analyzing the events surrounding Urbach's death within this framework, the trial court's conclusion that the acts of Urbach's cellmates were an intervening force is not clearly erroneous. The first factor could arguably support a finding of proximate cause. Urbach had a history of disputatious and confused behavior and releasing him might lead to his injury at the hands of someone he provoked. The chain of events, however, is extraordinary. The sequence between the furlough, arrest, and incarceration could not be easily predicted. Finally, the latter four factors all weigh in favor of concluding that the acts of Urbach's cellmates were an intervening cause. The prisoners acted completely independently of the VA's negligence, their actions were wrongful, and they were directly responsible for the injuries that caused Urbach's death.

The appellants move beyond this basic analysis of Texas law set out above. They argue that Texas law does not recognize the prisoner's acts as superseding because the underlying negligent act of allowing Urbach to travel to Mexico was a concurring or cooperating cause along with the acts of the cellmates.

The appellants cite several Texas cases in which an overtly negligent act by a third party was held not to be a superseding act. But each of these cases upon which the appellants rely involved an owner of property who allowed a continuously dangerous situation to exist so that the second party's act merely triggered an inherently dangerous situation. *Walker v. Burgdorf,* 150 Tex. 603, 244 S.W.2d 506 (1952) (negligently washing water and gas towards open sewer on street not superseded by bystander deliberately throwing lit match into the mixture); *McAfee v. Travis Gas Corporation,* 137 Tex. 314, 153 S.W.2d 442 (1941) (allowing a gas pipe to leak unrepaired for two years not superseded by person lighting a match and causing explosion); *Bicknell v. Lloyd,* 635 S.W.2d 150 (Tex.App.— Houston [1st Dist.] 1982, no writ) (unauthorized use of cart by children does not supersede negligence in leaving cart unattended because it afforded a peculiar "opportunity for intentional interference likely to cause harm."); *Marshall v. Joske's, Inc.,* 581 S.W.2d 192 (Tex.Civ.App.—San Antonio 1979, no writ) (making shopping aisles too narrow not superseded by person with baby carriage ramming plaintiff, causing a fall and subsequent injuries). The one case cited not involving negligent use of property was *Estate of Lee v. Continental Trailways,* 564 S.W.2d 392 (Tex.Civ.App.—Dallas 1978 writ ref'd n.r.e.), in which the defendant bus company was found liable for ejecting a passenger by the side of a highway where he was shortly run over and killed. As with the other four cases, in *Lee* the danger was apparent, the intervening tort was foreseeable and hence not superseding, and the chain of causation not nearly as tortuous as Urbach's. We conclude that the concurring or cooperating cause analysis under Texas law does not apply in this case. The VA's negligence did not actively and continuously operate in the sense of the Texas cases. *See McAfee,* 153 S.W.2d at 447.

Finally, the appellants cite cases which found liability for the negligent release and non-supervision of a psychiatric patient. In one of these cases the United States was found liable under the FTCA for the release of a patient who after having threatened a woman killed her upon his release. *Underwood v. United States,* 356 F.2d 92 (5th Cir.1966) (applying Alabama law).

*Underwood's* precedential authority has been undercut by a finding that its holding is now "equivocal." *See Garcia v. United States*, 776 F.2d 116, 118 (5th Cir.1985). A second case cited by the appellants involving a similar fact pattern is *Fair v. United States*, 234 F.2d 288 (5th Cir.1956) (applying Texas law). *Fair* did not hold the United States liable. Instead, the court found that a claim had been stated, and the case was remanded for a trial on the facts. *Fair* also did not find the potential negligent act the release of the patient, but rather the failure to warn the victim's security personnel, who had been promised notification upon release of the serviceman. Furthermore, in both of these cases the cause-and-effect relationship between the release of the patient and the harm involved obviously was much closer than in Urbach's case.

The appellants also urge that *Arlington Heights Sanitarium v. Deaderick*, 272 S.W. 497 (Tex.Civ.App.—San Antonio 1925, writ ref'd n.r.e.) supports their position. In that case the court found that allowing a mental patient to escape a sanitarium was a proximate cause of his death twelve hours later when he was run over on a railroad track. The circumstances are distinguishable. The trial court found Deaderick's demise was the foreseeable result of allowing him to wander about unsupervised. Further, his mental illness was found to be such that he was incapable of protecting himself from danger, the time between the negligent act and the injury was much shorter than in the present case (12 hours versus 10 months), and "ordinary care [was not] used to discover and recapture him." *Id.* at 499. Simply put, there is no conflict between the finding in *Deaderick* that the mental hospital's negligence was a concurring cause and Urbach's case where the trial court found the VA's negligence to be superseded by the prisoners' assaults.

### Conclusion

The comprehensive attempt by appellants to prove causation cannot succeed. The murder of Urbach by his cellmates in a Mexican prison was correctly found by the district court to be an intervening cause. The judgment below must be affirmed.

AFFIRMED.