# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 99-50196
Summary Calender

CHARLES GARTON, ET AL,

Plaintiffs,

WILMA GARTON, Individually, and as the Representative of the Estate of CHARLES GARTON, Deceased,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
(SA-96-CV-53)

December 2, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM and JONES, Circuit Judges.

PER CURIAM [1]:

This appeal arises out of a suit filed under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-80, alleging that Charles Garton developed hepatocellular carcinoma as a result of being transfused with hepatitis B and C tainted blood during a 1984 coronary artery bypass graft surgery performed at a Government hospital. The district court granted judgment in favor of the Government and, finding no error, we affirm.

## I.    BACKGROUND

In 1974, Charles Garton was serving a prison term for bank robbery in the Missouri State

---

[1]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Penitentiary. According to Penitentiary medical records, Mr. Garton had probably contracted some form of hepatitis by 1963. In March of 1974, Mr. Garton underwent a coronary artery by-pass graft procedure at the University of Missouri Medical Center. During this surgery, transfusions of blood and blood products were given.

On March 19, 1984, Charles Garton underwent redo coronary artery bypass graft surgery at the Audie Murphy Veterans Administration Hospital in San Antonio Texas (Audie Murphy). Before this surgery occurred, Mr. Garton informed the anesthesiologist of his having previously contracted hepatitis B. During this surgery, Mr. Garton received transfusions of blood and blood products from the Wilford Hall Blood Donor Center at Lackland Air Force Base in San Antonio, Texas.

On December 15, 1993, Charles Garton contacted the Veterans Administration Hospital in Albuquerque, New Mexico regarding his general complaints of decreased energy and malaise. A work-up conducted after laboratory tests revealed liver abnormalities. Laboratory studies conducted in early 1994 revealed hepatocellular carcinoma secondary to chronic hepatitis. At that time, the treating physicians at the Veterans Administration determined that the blood transfusions were the source of Garton's hepatitis. On March 22, 1994, another surgery was performed which removed 90% of a hepatocellular carcinoma from Garton's liver.

On May 10, 1994, Mr. Garton filed an "Application for Benefits" under the provisions of 38 U.S.C. § 1151, claiming a disability secondary to an injury that occurred as a result of VA authorized healthcare. After an investigation, the Department of Veterans Affairs found, on March 7, 1995, that Mr. Garton was entitled to compensation for his hepatocellular carcinoma. The Veterans Administration ratings specialist who reviewed the written opinions of the treating physicians later testified that there was no conclusive evidence establishing that the 1984 transfusion was the cause of Mr. Garton contracting hepatitis B and C. However, the ratings specialist testified that Mr. Garton was granted benefits because "reasonable doubts" were resolved in his favor.

On May 13, 1994, Mr. Garton was re-admitted to the Veteran's Hospital in Albuquerque and underwent daily radiation treatments to address his "post-incomplete tumor resection." In August of 1995, Garton presented an FTCA, 28 U.S.C. §§ 1346(b) and 2671-80, Administrative Claim with the Veteran's Administration, alleging that Charles Garton developed hepatocellular carcinoma as a result of being transfused with hepatitis B and C tainted blood during the 1984 coronary artery bypass graft surgery. Specifically, it contended that the Government's agents failed to properly screen the blood for hepatitis B and thereby departed from appropriate standards of care. The Air Force conducted an investigation into whether its agents and employees had followed appropriate blood banking procedures. This investigation revealed that most of the blood bank logs regarding Mr. Garton's 1984 transfusion had been destroyed, pursuant to Air Force regulations, after 10 years. The Veterans Administration formally denied Garton's claim on November 13, 1995 and this lawsuit followed.

At a subsequent bench trial, the Gartons attempted to introduce the undisclosed expert testimony of one Dr. Cohen concerning proper blood banking procedures. In response to this surprise testimony, the district court attempted to balance the interest of both parties. The court allowed the Gartons' expert to testify on the subject of blood banking but also allowed the Government to call a rebuttal witness, Dr. Kalmin, on the same subject. The district court allowed in the testimony of two other expert witnesses over the Gartons' objection that they were not qualified. The district court made several findings of fact and law, including that no adverse inference should be drawn from the Government's failure to preserve evidence of blood screening logs. The district court found that the standard of care in 1984 was to screen blood for hepatitis B, but that there was no test available at that time to screen blood for hepatitis C. Thus, there was no duty to screen blood for hepatitis C in 1984 and any claim based on such duty was dismissed. The district court concluded that "the most credible evidence established that in all reasonable medical probability, Garton's hepatocellular carcinoma was not the result of exposure to hepatitis B in the 1984 blood transfusion." Accordingly, the district court ordered that

judgment be entered in favor of the Government.  This appeal followed.  Mr. Garton died on October 30, 1998 as a result of the hepatocellular carcinoma before this appeal could be addressed.  Mr. Garton's wife was allowed to continue the suit.

## II.    DISCUSSION

### 1.    Undisclosed Expert Witness

The Gartons contend that the district court abused its discretion in denying their motion for a new trial because the district court allowed the Government to present the expert testimony of a previously non-disclosed witness, Dr. Kalmin.  Finding no error, we affirm.

The Gartons failed to disclose that their expert witness, Dr. Stephen Cohen, would proffer opinions regarding blood banking procedures.  The record shows that, during discovery, the Gartons failed to respond to Government interrogatories asking which experts, if any, the Gartons would call regarding blood banking procedures.  Such non-disclosure was a violation of Rule 26 of the Federal Rules of Civil Procedure.  Moreover, the Government specifically asked Dr. Cohen during his deposition whether he would testify as a blood banking expert and he replied that he would not as he was not such an expert.  The Government relied on this assurance and decided not to call a blood banking expert of its own.  At trial, the Gartons attempted to have Dr. Cohen testify about blood banking procedures.  In response to this surprise testimony, the district court crafted a solution intelligently balancing the interest of both parties.  The district court allowed the Gartons' expert to testify on the subject of blood banking procedures, but also permitted the Government to call a rebuttal witness, Dr. Kalmin, on that subject.

The district court's decision is clearly correct under the four factors in *Bradley v. United States*, 866 F.2d 120, 128 (5th Cir. 1989), for the admission of late designated witnesses: a) the importance of the evidence to the party attempting to introduce it; b) the prejudice to the opposing party; c) whether a continuance would cure prejudice; and d) the excuse, if any, for the failure to timely identify the witness in question.  *Bradley*, 866 F.2d at 128.  *See also Campbell v. Keystone Aerial Surveys, Inc.,* 138 F.3d 996, 1000 (5th Cir. 1998).  Dr. Cohen's testimony was

**4**

vital to the Gartons' case.  Without Dr. Cohen's testimony, Mrs. Garton had no expert to testify on blood banking procedures.  However, if the district court had admitted only Dr. Cohen's testimony, the Government would have been prejudiced since its decision to not call its own blood banking expert was premised on Cohen's assurances that he would not testify as such, as well.  Additionally, the Government relied the Gartons' failure to reply to the Government's interrogatories requesting the names of any blood banking experts to be called.

There is no basis to the Gartons' claim that they were prejudiced because they were afforded less than 24 hours in which to depose Dr. Kalmin and to prepare for his testimony.  It was the Gartons who attempted to bring surprise testimony and yet the Government was not permitted any continuance in which to depose Dr. Cohen before his testimony.  Thus, if anything, the district court was especially solicitous of the Gartons' interests.  Similarly, the district court's decision to not allow a longer continuance was reasonable and within the Garton's interests given Mr. Garton's terminal condition.  Finally, the Gartons offered no credible excuse for their failure to timely designate Dr. Cohen as a blood banking expert.  There is no basis to their argument that Dr. Cohen's prior testimony put the Government on notice that Dr. Cohen was to be called as a blood banking expert.  As noted, Dr. Cohen testified at deposition that he was not such an expert and the Gartons listed no such experts in response to the Government's interrogatories.

Given these facts, the district court did not abuse its discretion by admitting the testimony of Drs. Kalmin and Cohen.  Thus, the denial of a motion for a new trial is affirmed.

### 2.    Other Expert Testimony

The Gartons allege that the district court abused its discretion by admitting the testimony of two Government expert witnesses, Drs. Lerner and Hoyumpa, regarding the etiology of Mr. Garton's liver cancer.  Finding no abuse of discretion, we affirm.

The determination whether a witness is qualified to testify as an expert is reviewed for abuse of discretion.  *See Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Moore v. Ashland Chemical Co.*, 151 F.3d 269, 274 (5th Cir. 1993) (en banc).  Expert testimony

is properly admitted where: (1) the "scientific, technical, or other specialized knowledge will assist the trier of fact" in its effort to understand the evidence at issue, and (2) the witness is "qualified as an expert by knowledge, skill, experience, training or education . . . ." Fed.R.Evid 702. *See also Daubert*, 509 U.S. at 579. To be qualified as an expert, a witness must have a "reliable basis in knowledge and experience of the relevant discipline." *Id.* at 592.

There is ample evidence in the record to support the conclusion that Drs. Lerner and Hoyumpa were qualified to testify regarding the etiology of Mr. Garton's liver cancer. The medical credentials of Drs. Hoyumpa and Lerner are impressive and in areas of expertise highly relevant to this case. Dr. Hoyumpa has written thirteen peer reviewed articles regarding liver disease and has lectured extensively on that subject. He is a tenured professor of medicine at the University of Texas Health Science Center. The Gartons' argument that Dr. Hoyumpa is not board certified and that his published research did not pertain in particular to the effects of hepatitis on liver hepatomas, is a matter of degree of expertise which can explored through cross examination. Dr. Hoyumpa's credentials are clearly sufficient to qualify him as an expert.

Similarly impressive are Dr. Lerner's qualifications and the Gartons did not seriously contend that he was not qualified. Dr. Lerner is board certified in internal medicine. He has been a clinical professor at the University of Texas Health Science Center since 1986. He is a former president of the Texas Infectious Disease Society.

Having determined that the doctors were qualified, we turn to whether their testimony was based in their expertise and helpful to the trier of fact. Dr. Hoyumpa reviewed Mr. Garton's medical charts as well as reports by the pathologists who examined Mr. Garton's liver tumor. Dr. Hoyumpa's testimony explained what he concluded from this review. Dr. Hoyumpa also explained other relevant medical facts such as how long liver cancer typically takes to develop and how Mr. Garton was especially at risk to develop liver cancer due to his tattoos, years in prison, time served in prison as a physician's assistant, and his hospitalization in 1963 with elevated liver enzyme levels. Based on this review, as well as Dr. Hoyumpa's medical knowledge and medical

tests suggesting that Garton had acquired hepatitis in the past, Dr. Hoyumpa testified that, to a reasonable degree of medical certainty, Garton contracted hepatitis B and C in 1963. Dr. Lerner's testimony was of a similar nature.

There can be little doubt that the doctors were qualified to testify regarding the etiology of Mr. Garton's liver cancer. It is clear that their testimony was not only based in their expertise, but also highly relevant and very helpful to the trier of fact. Thus, the district court did not abuse its discretion in admitting the testimony of these doctors.

### 3. The Government's Failure to Preserve Blood Screening Logs

The Gartons allege that the district court erred in declining to draw an adverse inference from the Government's failure to preserve or produce evidence of blood screening logs or records. The evidentiary rulings of a district court are reviewed for abuse of discretion and will be reversed only if any error affects a substantial right of a party. *First National Bank of Louisville v. Lustig*, 96 F.3d 1554, 1574 (5th Cir. 1996). We find no abuse of discretion and affirm.

The Government maintains that the records were destroyed, pursuant to routine procedure, in February or March of 1994. This would be well in advance of the Gartons having served interrogatories seeking such records and before Mr. Garton filed his FTCA Administrative tort claim on August 22, 1995. This explanation is supported by the existence of Air Force regulation AFR4-20, which provides that processing ledgers may be destroyed after 10 years.

The Gartons contend that the records were destroyed much later than the Air Force admits, and only after the Government had notice of their relevance to the Gartons' lawsuit against the Government. However, the Gartons brought no direct evidence that these records were destroyed in bad faith, i.e. no witness or document was found directly proving that the Air Force destroyed these records despite being aware of their possible relevance at trial. The Gartons argue that the Government used the blood donor records in its decision to award VA benefits in March of 1995, one year after the Government alleges that those records were

**7**

destroyed. However, the Gartons bring no evidence which directly supports this allegation. The Gartons add that since the Air Force preserved less significant records which could have been destroyed after seven years, additional suspicion is cast on the destruction of the blood records. However, this evidence is too weak to prevent the district court from reaching the opposite conclusion.

Even assuming there is a conflict in the evidence about when and how the blood donor records were destroyed, it was within the district court's discretion to find that the Air Force's story was more credible. In fact, the district court's refusal to draw an adverse inference was supported by evidence that these records were destroyed under routine procedure. As this court noted in *Vick v. Texas Employment Commission*, 514 F.2d 734, 736-37 (5th Cir. 1975), an inference of "spoilation" is not justified where records were destroyed under routine procedures without bad faith and well in advance of the plaintiff's service of interrogatories seeking information from records. Given the facts of this case, the refusal to draw an adverse inference was within the bounds of the district court's discretion.

### 4. The District Court's Factual Findings

The Gartons challenge the district court's findings of fact. This court will affirm the district court's findings unless they are clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Barrett v. United States*, 51 F.3d 475, 478 (5th Cir. 1995). In particular the Gartons allege that while their theory of causation was that a single blood packet containing both hepatitis B and C infected Mr. Garton, the district court erroneously focused solely on whether hepatitis B was contracted from a source besides the transfusions. However, the record supports the district court's conclusion that, in all reasonable medical probability, Mr. Garton's hepatocellular carcinoma was not the result of exposure to *any* hepatitis in the 1984 blood transfusion at the Audie Murphy Memorial Veterans Hospital.[1]

---

[1] A determination of cause in a tort case is a determination of fact which is reviewed under a clearly erroneous standard. *See, e.g., Urbach v. United States*, 869 F.2d 829, 831 (5th Cir. 1989)

The record shows that Mr. Garton had several other risk factors for developing hepatitis and liver cancer besides the blood transfusions, including tattoos, working in Asia, acute hepatitis reflected in the 1963 prison medical records, 14 years in prison, and work as a physician's assistant while in prison. Moreover, credible medical evidence supported the inference that hepatitis C is the most common medical precursor for hepatocellular carcinoma, that the incubation period for such carcinoma is most commonly 20 years and is rarely less than 15 years. In contrast, the Garton's theory of liability assumed a significantly shorter period of incubation. As previously discussed, there is no basis to the Gartons' claim that the Government's expert medical testimony was speculative or that the witnesses giving that testimony were unqualified. In addition, Lee Crawford, the Veterans Administration officer who determined that Mr. Garton was entitled to benefits, testified that there was no conclusive evidence showing that Mr. Garton had contracted hepatitis from the transfusion at the VA hospital in 1984. Therefore, despite the fact that medical staff at the Veterans Administration had determined that the blood transfusions were the source of Mr. Garton's hepatitis, there was considerable medical evidence to support the opposite conclusion. Thus, the district court's findings were not clearly erroneous and are therefore affirmed.

IV.    CONCLUSION

For reasons detailed above, the order of the district court is AFFIRMED.

---

(Holding, in affirming FTCA bench trial, that proximate cause, cause-in-fact, and foreseeability are facts reviewed for clear error.)