United States Court of Appeals,

Fifth Circuit.

No. 91-5571.

David R. RODRIGUEZ, et al., Plaintiffs-Appellants,

v.

PACIFICARE OF TEXAS, INC., Michael Heistand, M.D., Defendants-Appellees.

Jan. 12, 1993.

Appeal from the United States District Court for the Western District of Texas

Before KING, JOHNSON, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

David Rodriguez ("Rodriguez") appeals from a summary judgment entered against him and his two minor children on their claims against Pacificare of Texas, Inc. ("Pacificare"), and Dr. Michael Heistand ("Heistand"). These claims stem from Pacificare's refusal to reimburse Rodriguez for medical expenses he incurred. Finding no reversible error, we affirm.

Background and Procedural History

Rodriguez's employer provided health insurance benefits to its employees through Pacificare, a health maintenance organization (HMO). After being involved in an automobile accident, Rodriguez sought medical attention for himself and his children from Dr. Heistand, their primary care physician. Rodriguez believed that the attention of an orthopedic specialist was needed, but was stymied in his efforts to obtain a referral letter from Heistand or Pacificare. A referral letter is necessary for the HMO to reimburse the cost of the treatment. Dissatisfied with the response he was receiving from Pacificare and Heistand, Rodriguez went outside his HMO's channels and consulted an orthopedist who placed him in therapy.

Pacificare declined to cover the unapproved expenses. Bypassing the administrative procedures for contesting claim denials,[1] Rodriguez, acting pro se, filed suit in Texas state court

---

[1] Normally, failure to exhaust the administrative remedies provided for in an ERISA plan forecloses judicial review of the claim denial. *See Denton v. First Nat'l Bank,* 765 F.2d 1295, 1300-03 (5th Cir.1985). The deadline for Rodriguez to use Pacificare's grievance procedures has

against Pacificare and Heistand for failing to "provide prompt and adequate medical care and coverage." The Appellees removed this action to the district court, and moved for summary judgment. Heistand's motion was supported by his own affidavit, given as a medical expert. Although instructed to identify a medical expert who would contradict Heistand's affidavit, Rodriguez instead filed deposition testimony of a physician given in a worker's compensation action Rodriguez was pursuing in state court. The district court granted summary judgment in the Heistand's favor on the basis of his uncontroverted affidavit. The state law claims against Pacificare were held preempted by federal statute.

Discussion

On appeal, Rodriguez challenges removal jurisdiction and alleges error in the procedures the district court used in granting summary judgment.

A. *Subject-Matter Jurisdiction and Removal.*

*1. ERISA Preemption.*

Rodriguez has continually challenged the district court's exercise of jurisdiction over his lawsuit after it was removed from Texas state court. Removal is proper for "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States...." 28 U.S.C. § 1441(b) (1986). While the claims in the present case are couched in terms of state law, the cause of action against Pacificare, as an HMO and health insurance benefits provider, is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (1985 & Supp.1992).[2] *See id.* at § 1144(a) (Except as otherwise

---

long since passed, and to remand this case now would be futile. *See Offutt v. Prudential Ins. Co.,* 735 F.2d 948, 950 (5th Cir.1984) (A reviewing court will not remand to allow a plaintiff to exhaust remedies "when it would be a useless formality.").

[2]The Pacificare plan provided to Rodriguez by his employer, Culligan Water Conditioning, clearly meets the requirements to qualify as an ERISA welfare benefits plan. To make this determination, we focus on the employer's involvement in the plan. *See Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 242-43 (5th Cir.1990). This inquiry has been codified into a four-step process:

> The terms "employee welfare benefit plan" and "welfare plan" shall *not* include a group or group-type insurance program offered by an insurer to employers ... under which

provided, ERISA's provisions "shall supersede any and all State laws insofar as they relate to any employee benefit plan....").

Removal is not possible unless the plaintiff's "well pleaded complaint" raises issues of federal law sufficient to support federal question jurisdiction. *Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Generally, federal preemption is a defense to a claim, and "does not appear on the face of a well pleaded complaint, and therefore does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

An exception to the well pleaded complaint rule has been carved out for those areas in which Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63-64, 107 S.Ct. at 1546. Such a niche has been carved out by Congress for claims for benefits brought by participants and beneficiaries of ERISA-regulated employee benefit plans. *See* 29 U.S.C. § 1144(a); *Metropolitan Life Ins. Co.,* 481 U.S. at 66, 107 S.Ct. at 1547; *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 55-56, 107 S.Ct. 1549, 1557-1558, 95 L.Ed.2d 39 (1987) (Congressional intention is clear "that all suits brought by beneficiaries asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by [ERISA's civil enforcement mechanisms].").

---

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are ... to permit the insurer to publicize the program ..., to collect premiums ..., and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program[.]

29 C.F.R. § 2510.3-1(j) (1992) (emphasis added). All four of these criteria must be met in order for a plan to be exempt from ERISA. *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452 (5th Cir.1991). In the present case, Culligan's employees contributed, through payroll deductions, a portion of the insurance premiums; Culligan paid the balance. Such an arrangement sufficed for the necessary employer relationship to the plan in *Memorial Hosp. Sys., see* 904 F.2d at 243, and we likewise find this sufficient here.

ERISA regulates employee benefit plans that " "through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co.,* 481 U.S. at 44, 107 S.Ct. at 1551 (quoting 29 U.S.C. § 1002(1)). The Pacificare HMO plan provided to Rodriguez by his employer clearly meets this test. State law claims are "related to" employee benefit plans, and hence are preempted, if the state law has a "connection with or reference to such a plan." *Shaw v. Delta Air Lines,* 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Rodriguez's state law claims, at bottom, result from dissatisfaction over Pacificare's handling of his medical claims. Consequently, his state law causes of action are sufficiently related to the employee benefit plan, in that they clearly have a "connection or reference to such a plan," to be pre-empted by ERISA. *Id.; see Pilot Life Ins. Co.,* 481 U.S. at 55-57, 107 S.Ct. at 1557-1558; *Metropolitan Life Ins.,* 481 U.S. at 62-63, 107 S.Ct. at 1545-1546; *Lee v. E.I. Du Pont de Nemours & Co.,* 894 F.2d 755, 758 (5th Cir.1990); *Boren v. N.L. Indus., Inc.,* 889 F.2d 1463, 1465-66 (5th Cir.1989), *cert. denied,* --- U.S. ----, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990).

*2. Supplemental Jurisdiction.*

The claims against Pacificare supported removal based on the existence of a federal question, albeit one not apparent on the face of Rodriguez's complaint. The state law causes of action against Heistand were properly before the district court via its exercise of supplemental jurisdiction.[3]

Traditionally, state claims against a defendant in a federal forum could be adjudicated if they

---

[3]More accurately, the district court exercised pendent jurisdiction over the claim against Heistand. This area of federal jurisdiction has long been the subject of puzzlement among jurists and commentators. However, this is "for the most part, a matter of unhappy history." Charles Alan Wright Et Al., *Federal Practice and Procedure* § 3567.2 (Supp.1992). As part of the Judicial Improvements Act of 1990, Congress has granted to the courts the power of supplemental jurisdiction. 28 U.S.C. § 1367 (Supp.1992). In any civil action over which the district courts have original jurisdiction, courts now have the power to hear

> [A]ll other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). *See* discussion *infra* on applicability of § 1367.

were appended to a federal claim against that defendant, and derived from the same nucleus of operative facts. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Grinter v. Petroleum Operation Support Serv., Inc.,* 846 F.2d 1006, 1008 (5th Cir.), *cert. denied,* 488 U.S. 969, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). This pendent claim jurisdiction spawned pendent party jurisdiction, in which federal claims are levied against one defendant, while state law claims are alleged against a different, nondiverse defendant. If the factual basis for both of these claims was "sufficiently intertwined," a federal court could adjudicate the state law claims against the pendent party. *See Feigler v. Tidex, Inc.,* 826 F.2d 1435, 1439 (5th Cir.1987).

Pendent party jurisdiction was sharply curtailed by the Supreme Court's decision in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The *Finley* Court assumed that pendent party jurisdiction was constitutional, but that such a power must first be animated by Congressional directive. 490 U.S. at 552, 109 S.Ct. at 2009. Lower courts were directed to look to the federal statutes to ascertain if pendent party jurisdiction was expressly granted in a particular instance. *Id.* Following this guidance, we held that ERISA did not provide for pendent party jurisdiction. *Iron Workers Mid-South Pension Fund v. Terotechnology Corp.,* 891 F.2d 548, 551 (5th Cir.) (no pendent jurisdiction over Louisiana property owner against whom plaintiffs asserted state law lien claim), *cert. denied,* --- U.S. ----, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990).

*Iron Workers* was correctly operating under the principle announced in *Finley* that "pendent party jurisdiction does not exist, unless Congress has expressly spoken to allow it." *Sarmiento v. Texas Bd. of Veterinary Medical Examiners,* 939 F.2d 1242, 1247 (5th Cir.1991). Congress has now spoken. As part of the Judicial Improvements Act of 1990, 104 Stat. 5089 *et seq.,* district courts are now granted "supplemental jurisdiction" over claims so related to a federal question "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This is a broad grant, and by employing the "case or controversy" language found in Article III "Congress indicates that it wants supplemental jurisdiction at least in the first instance—subject to its declination as a matter of judicial discretion under subdivision (c)—to go to the constitutional limit, to which it appeared to be carried in the *Gibbs* case." David D. Siegel,

*Commentary on 1990 Revision,* 28 U.S.C.A. § 1367, at 232 (West Supp.1992).[4]

Section 1367 is applicable to actions that were commenced after December 1, 1990. *See Whalen v. Carter,* 954 F.2d 1087, 1097 n. 10 (5th Cir.1992). Rodriguez's claims were removed to the district court in September 1989, and are apparently still governed by *Finley* and *Iron Workers.* The clear intent of Congress, as illustrated in § 1367, prompts us to agree that "[I]t would make no sense to give an expansive reading to *Finley* to reach a result that Congress has deliberately repudiated for future cases." Charles Alan Wright Et Al., *Federal Practice and Procedure* § 3567.2 (Supp.1992). Since the doctrinal underpinnings of *Finley* have been abolished by statute, the continued validity of *Iron Workers,* a case directly based on the mandate of *Finley,* is questionable. We hold that the exercise of jurisdiction over Rodriguez's claim against Heistand was not reversible error.

B. *Summary Judgment Procedures.*

1. *Standard of Review.*

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment, we apply the same standard of review as did the district court. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 548 (5th Cir.1989). The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To that end we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

---

[4]We emphasize that supplemental jurisdiction is a matter to be exercised at the discretion of the district court. There are a myriad of instances where remand of state claims may be appropriate, for example, where state law claims predominate the suit. See 28 U.S.C. § 1367(c) for factors that a district court may consider when determining whether or not a remand is in order.

587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc).

## 2. *Expert's Affidavit.*

Rodriguez challenges the district court's decision allowing Heistand to support his motion with his own affidavit as an expert. To qualify as a medical expert, Texas law requires that: "[T]he person is practicing at the time such testimony is given or was practicing at the time the claim arose and has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim[.]" Tex.Rev.Civ.Stat.Ann. art. 4590i § 14.01(a)(1) (Supp.1992). Heistand presented his affidavit with his summary judgment motion, in which he swore that he was a licensed physician practicing medicine in San Antonio, Texas. He swore that he was familiar with the standard of care applicable to injuries like those suffered by the Rodriguezes; Heistand described this standard of care in detail and testified that he did not deviate from it. The district court found that Heistand met the statutory criteria for qualifying as an expert witness, and permitted the introduction of his affidavit.

Nothing in the Federal Rules of Evidence prohibits a party from serving as an expert witness. The fact that the witness is a party is properly considered when the court assesses the witnesses' credibility. The Seventh Circuit has indicated that a defendant may serve as his own expert. *Tagatz v. Marquette Univ.,* 861 F.2d 1040, 1042 (7th Cir.1988). Texas state courts also allow this procedure in medical malpractice cases. *See, e.g., Milkie v. Metni,* 658 S.W.2d 678, 680 (Tex.App.—Dallas 1983, no writ); *Gaut v. Quast,* 505 S.W.2d 367, 369 (Tex.Civ.App.—Houston 1974, writ ref'd n.r.e.).

The decision to qualify an expert is within the sound discretion of the trial judge. *See In re Delta Towers, Ltd.,* 924 F.2d 74, 79 (5th Cir.1991). We find no abuse of discretion and hold that a party may testify as an expert in his own case, provided that the relevant qualifying criteria (statutory or otherwise) are met.

## 3. *Failure to Contradict Expert's Affidavit.*

Heistand's affidavit set forth the applicable standard of care, and also opined that this standard

was not breached in his treatment of the Rodriguezes. The fact that Heistand was not a specialist in orthopedics is unavailing as a challenge to this testimony. *See Simpson v. Glenn,* 537 S.W.2d 114, 116-117 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).

Rodriguez based his state law claims against Heistand on the failure of the doctor to provide prompt and adequate medical care. Texas law places the burden of proof on the plaintiff to establish by expert testimony that the act or omission of the defendant physician fell below the appropriate standard of care and was negligent. *See Ayers v. United States,* 750 F.2d 449, 453 (5th Cir.1985); *Gonzalez v. United States,* 600 F.Supp. 1390, 1393 (W.D.Tex.1985); *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (1949). When state law requires a plaintiff to prove negligence by expert testimony, summary judgment can be granted where the defendant presents expert affidavits and the plaintiff presents no such affidavits. *See Jones v. Wike,* 654 F.2d 1129, 1130 (5th Cir.1981); *Reinke v. O'Connell,* 790 F.2d 850 (11th Cir.1986); *see also* Tex.R.Civ.P. 166a(c) ("A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.").

Rodriguez was instructed by the district court to identify an expert who would offer testimony to counter Heistand's affidavit. Despite being granted an extension of time in which to locate an expert, Rodriguez failed to do so. Instead, he filed deposition testimony of a physician involved in a state court worker's compensation case. Neither Heistand or Pacificare was a party to Rodriguez's worker's compensation case, nor were they granted any opportunity to cross-examine the deposed physician. This testimony would be inadmissible against Heistand at trial. *See* Fed.R.Evid. 804(b)(1). The trial court did not err in refusing to consider this deposition testimony, and the grant of summary judgment was properly entered against Rodriguez.

*4. Notice Requirements of Rule 56.*

Rodriguez's final point of error centers on the notice, or lack thereof, he was given prior to the summary judgment hearing. Federal Rule of Civil Procedure 56(c) requires that "The [summary judgment] motion shall be served at least 10 days before the time fixed for hearing." Rodriguez

maintains that he received a telephone call informing him that a scheduling conference would occur the following day. The summary judgment motion, which had been pending for over two months, was argued at that time.

The Appellant appears to misconstrue Rule 56(c) as requiring that notice be given at least ten days prior to the time set for hearing. Rule 56(c), however, merely requires that the hearing take place no less than ten days from the date the moving party serves the motion.

A court satisfies the notice requirements of Rule 56 if its local rules require that a response to a summary judgment motion be filed within a specified period of time. *See Hamman v. Southwestern Gas Pipeline, Inc.,* 721 F.2d 140, 142 (5th Cir.1983). The Local Rules for the Western District of Texas allow ten days to respond to a summary judgment motion; oral argument is not granted unless requested. W.D.Tex.R.CV-7(e), (h). These rules are almost identical to ones which we found gave adequate notice in *Howell v. Tanner,* 650 F.2d 610, 614 (5th Cir.1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982). In a similar fact pattern, the *Hamman* court surmised: "These rules put appellants on notice that the district court could decide the motion at any time after 20 days had passed from the time it was filed. Appellants had filed a responsive brief. The requirements of Rule 56(c) were satisfied." *Hamman,* 721 F.2d at 142. Rodriguez had filed a brief in opposition to the summary judgment motions of Pacificare and Heistand. The notice requirements of Rule 56(c) were met.[5]

The judgment of the district court is AFFIRMED. All motions for sanctions are DENIED.

---

[5]The present case is not analogous to the "conversion to a summary judgment motion" as discussed in *Hickey v. Arkla Indus., Inc.,* 615 F.2d 239 (5th Cir.1980). In *Hickey,* the court had before it a Fed.R.Civ.P. 12(b)(6) motion to dismiss; however, prior to the hearing on the motion additional material was filed with the court. When the court considered the information outside of the pleadings, it effectively converted the 12(b)(6) motion into a summary judgment motion. Fed.R.Civ.P. 12(b). This triggered the notice requirements of Rule 56, and it was improper to proceed to the merits of the motion without having given fair warning to the parties. *See Hickey,* 615 F.2d at 240.

In the present case, there was before the court a Rule 56 summary judgment motion, not a 12(b)(6) motion.