**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-30061

J KIM FAWVOR,

Plaintiff-Appellant,

VERSUS

KERR MCGEE CORP,

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

(98-CV-1089)

May 8, 2001

Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges:

PER CURIAM:*

J. Kim Fawvor appeals the district court's order granting summary judgment to his former employer, Kerr-McGee Corporation (Kerr-McGee), and finding that the Kerr-McGee Corporation Benefits Committee (the Administrator) did not abuse its discretion in denying Fawvor severance benefits under the Restated Kerr-McGee Corporation 1996/1997 Restructuring Plan (the Plan).[1]   After

---

*Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

[1] The plan was originally effective October 1, 1996, and was amended and restated effective March 1, 1997.

reviewing the record and the briefs, we find that the Administrator did not abuse its discretion, and we AFFIRM the judgment of the district court granting summary judgment to Kerr-McGee.

## FACTS AND PROCEDURAL HISTORY

Fawvor worked for Kerr-McGee in various capacities between 1979 and September 22, 1997. Although Fawvor began his employment with Kerr-McGee as a roustabout, he was promoted to "Production Foreman" in 1991. As of October 1996, Fawvor was "assigned to assist in the development and implementation of the SEMP [Safety and Environmental Management Program] plan."[2] His duties included onshore and offshore work, such as conducting safety audits, training field personnel, and developing written operating and maintenance procedures. Although Fawvor initially spent most of his time at Kerr-McGee's Lafayette office, his officially designated job location throughout his employment with the SEMP was "offshore."[3]

On October 1 1996, Kerr-McGee underwent restructuring and moved its Exploration and Production Department (E & P) offices,

---

[2] According to Production Manager Darrell Holleck, SEMP's goal was to address potential safety and environmental issues in operations being conducted in the Gulf of Mexico.

[3] A series of Personnel Action Forms from June 11, 1996 to September 30, 1997 indicate that Fawvor's job location was, at all times, listed as "# 279." Internal Correspondence from Kerr-McGee indicates that "#279" is company code for "offshore out of Morgan City." Fawvor does not challenge this designation but argues merely that his work location was a "fiction," as demonstrated by his actual work location.

the division under which Fawvor was employed, from Lafayette to Houston. As part of the restructuring, Kerr-McGee promulgated the Plan, under which employees terminated not later than September 30, 1997, were eligible to receive severance benefits. The Plan defines "Eligible Employees" as those "regular full-time U.S. domestic employees of Kerr-McGee whose employment has been terminated." The term "Eligible Employees" does not, however, extend to those "[e]mployees whose employment is terminated due to . . . voluntary resignation." The term also excludes "[e]mployees who decline an offer of a Comparable Job within Kerr-McGee Corporation or an affiliate." "Comparable Job means a position with Kerr-McGee . . . that requires similar knowledge, skills, and experience, will not result in lower Base Pay, and the work location is 50 miles or less from the current work location."

On November 21, 1996, Kerr-McGee issued a bulletin stating, "Most local employees will be offered transfers; however, the company wants to emphasize that Kerr-McGee's offshore workers, some 200 in all, who live and work in the Lafayette/Morgan City area will not be affected by the move." At the time of the reorganization, Kerr-McGee determined that Fawvor could most effectively be employed as a production foreman working a "regular 7/7 hitch offshore," which included SEMP duties and other projects within the operations department. Darrell Holleck, Fawvor's supervisor, assured Fawvor, however, that his job was not scheduled for termination. After the reorganization, Fawvor continued at the

same pay grade as a production foremen.

On September 22, 1997, Fawvor submitted a letter of resignation in which he stated that he had "found some business opportunities within our industry and want[ed] to explore them." Fawvor made a claim for severance benefits, but the Administrator, which had "the authority to interpret the Plan, manage its operation and determine all questions arising in the administration, interpretation and application of the Plan," concluded that Fawvor was not eligible for benefits because he was not an "Eligible Employee" as he had "voluntarily terminated" his employment. The Administrator also concluded that because Fawvor's job position was located offshore prior to the reorganization, the closing of the Lafayette office did not affect Fawvor's eligibility.

Fawvor filed suit in the Western District of Louisiana against Kerr-McGee pursuant to the Employee Retirement Income Security Act (ERISA), 28 U.S.C. § 1101 et. seq., to recover benefits under the Plan. Fawvor claimed that because the Plan excludes employees from eligibility who decline comparable employment, it must, as a corollary, include employees who decline non-comparable employment and resign. Fawvor claimed his new job was not comparable because of the change in his work schedule and because his new work location is more than fifty miles from Lafayette. Both Fawvor and Kerr-McGee moved for summary judgment. In Kerr-McGee's motion it argued that Fawvor failed to exhaust his administrative remedies

4

under the Plan.  The district court dismissed Fawvor's suit without prejudice and remanded the case to the Administrator.  After Fawvor exhausted his administrative remedies, the district court granted Kerr-McGee's motion for summary judgment on the merits.  The district court held that the Administrator had not abused its discretion in finding that Fawvor voluntarily terminated his employment and that Fawvor's job position was comparable under the Plan.  Fawvor now appeals to this court.

**ANALYSIS**

"Summary judgment is appropriate if 'the record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Duhon v. Texaco, Inc., 15 F.3d 1302, 1305 (5th Cir. 1993) (quoting Rodriquez v. Pacificare, Inc., 980 F.2d 1014, 1019 (5th Cir. 1993)).  In reviewing a district court's grant of summary judgment, we employ a de novo standard of review, id. (citing FDIC v. Ernst & Young, 967 F.2d 166, 169 (5th Cir. 1992)), and "apply the same standard of review as did the district court."  Id. (citing Rodriquez, 980 F.2d at 1019).

"A denial of ERISA benefits by a plan administrator . . . is [also] reviewed under a de novo standard unless the plan gives the administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"  Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).

5

"Challenges to the plan administrator's interpretations of plan terms . . . are reviewed under an abuse of discretion or 'arbitrary and capricious' standard if the plan grants the administrator the authority to make a final and conclusive determination of the claim." Id.  A decision is arbitrary and capricious only if "it is made without a rational connection between the known facts and the decision or between found facts and the evidence." Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 213-14 (5th Cir. 1999).  A decision should be affirmed if it is supported by substantial evidence. Id. Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language. Threadgill v. Prudential Sec. Group, Inc., 145 F.3d 286, 292 (5th Cir. 1998) (citing Nickel v. Estate of Estes, 122 F.3d 294, 298 (5th Cir. 1997)).

Because the Administrator had "the authority to interpret the Plan, manage its operation and determine all questions arising in the administration, interpretation and application of the Plan" and because this challenge is, in essence, a challenge to the Administrator's interpretation of plan terms, we employ an abuse of discretion standard of review.[4]

---

[4] We note, as the court in Duhon did, that some cases employ a two-pronged test in addressing the question of whether the Administrator abused its discretion. Duhon, 15 F.3d at 1307 n.3. That is, to determine if the Administrator's interpretation was legally correct, a court must look to "(1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different

Fawvor's challenge is, at base, two-fold: (1) that he qualifies as an "Eligible Employee" and (2) that because his job after the reorganization was non-comparable, his voluntary resignation does not preclude him for recovering severance benefits.

As the district court held, "the Administrator did not abuse its discretion in finding that plaintiff's resignation rendered him ineligible for severance benefits under the foregoing Plan provision." Fawvor was not terminated as a result of the E & P reorganization. Fawvor's contention that voluntary resignation does not preclude eligibility under the Plan is belied by the expressly stated purpose of the Plan. The first section of the Plan states that "[t]he purpose of this Kerr-McGee Corporation 1996/1997 Restructuring Plan as amended and restated (the 'Plan') is to provide Eligible Employees . . . severance benefits upon termination of employment <u>by</u> Kerr-McGee Corporation or any of its

---

interpretations of the plan." <u>Rhorer v. Raytheon Eng'rs & Constructors, Inc.</u>, 181 F.3d 634, 640 n.7 (5th Cir. 1999). If the court determines that the Administrator's interpretation was legally incorrect, then it must examine three additional factors to determine whether the Administrator's error constitutes an abuse of discretion: "(1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of bad faith." <u>Id.</u> at 643 (citation omitted). Like the <u>Duhon</u> court, however, we recognize that "the reviewing court is not rigidly confined to this two-step analysis in every case." <u>Duhon</u>, 15 F.3d at 1307 n.3. As it is clear from the record that the Administrator did not abuse its discretion, we decline to employ the two-step analysis.

affiliates. . . ." (emphasis added). Fawvor's employment was not terminated by Kerr-McGee; Fawvor voluntarily resigned.

Even if we were to find that Fawvor is an "Eligible Employee" under the Plan, we express doubt as to whether Fawvor's job after the reorganization was so non-comparable as to allow him to resign without excluding himself from benefits. Before the reorganization, Fawvor was an offshore foreman who assisted in the development and implementation of the SEMP for offshore workers. Because his regular work location was "offshore," the relocation of the E & P Office from Lafayette to Houston had no impact on his eligibility. Fawvor's duties were a function of the needs of the SEMP at a particular time. Although for a while Fawvor did spend the majority of his time in the Lafayette office, Fawvor's job description, both before and after the reorganization, was as an "offshore" worker.

Similarly, although Fawvor's duties evolved over time, his position as a "Production Foreman" did not change as a result of the reorganization. In fact, Fawvor's "Job Title," (i.e., "Production Foreman") remained the same from 1991 until his voluntary departure. Similar knowledge and skills were required, and his base pay remained unchanged after the relocation of the E & P office.

## CONCLUSION

8

For the foregoing reasons, we affirm the district court's grant of summary judgment to Kerr-McGee.

AFFIRMED.