IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-51069

CHARLES EDWARD GARNER, JR.,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
(99-CV-386)

July 11, 2002

Before HIGGINBOTHAM, JONES and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Following a bench trial on this Federal Tort Claims Act action for negligence and medical malpractice, Charles Edward Garner, Jr., *pro se*, federal prisoner number 08955-035, appeals from the district court's grant of partial summary judgment to the government and denial of his motions to subpoena witnesses and for appointment of counsel. Garner filed a complaint in federal district court against the United States pursuant to the FTCA

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

alleging that he received negligent medical treatment while housed at the Federal Prison Camp ("FPC") in El Paso and later the Federal Correctional Institution ("FCI") at La Tuna, Texas, from February 1997 through early 1999. He alleged that the wardens refused him proper medical care and also denied him access to prescribed medical devices. He also alleged that Drs. Enrique Spiegler, Catalino Layumas, and Lawrence Leyva and other medical staff failed to diagnose properly and treat his pseudoarthrosis[1] and that, as a result of the negligence of the government defendants, the condition of his cervical vertebrae worsened, resulting in pain and a loss of range of motion in his neck, shoulders, and arms as well as bilateral carpal tunnel syndrome.

At various times after filing his complaint, Garner moved for appointment of counsel and to subpoena witnesses, including Drs. David Masel, Gregory Smith, George Beach, and Brian Willis, which motions the district court denied. Prior to trial, the government filed a motion to dismiss or for summary judgment. The district court granted summary judgment to the government on the medical malpractice portion of the Garner's claims but declined to grant summary judgment on the simple negligence portion of the claims against the prison officials, which was tried to the bench. Following Garner's case-in-chief, the district court entered

---

[1] Pseudoarthrosis involves the failure of bones, in Garner's case the spine, to fuse following surgery.

judgment as a matter of law for the government on the negligence claim.

Garner now appeals.  For the reasons that follow, we affirm.

I

We will first trace the procedural history of this prisoner FTCA case.  By way of background, Garner is a federal inmate serving an 84-month prison sentence.  From February 1997 to October 1998, he was designated for service of his sentence at the FPC in El Paso, and he was subsequently transferred to the FCI at La Tuna, Texas and then the FCI at Big Spring, Texas.  Finally, in May 1999, he was designated for service of his sentence to the Federal Medical Center at Fort Worth, Texas.

Garner filed his FTCA complaint on November 23, 1999, and paid the filing fee.  On March 27, 2000, Garner filed a motion for appointment of counsel, arguing that counsel should be appointed because he was incarcerated, indigent, and lacked access to legal materials.  He attached to his motion an affidavit in support of a motion to proceed *in forma pauperis* (IFP).  The district court denied the motion two days later.

Thereafter, on March 30, 2000, Garner filed a pleading, pursuant to the court's scheduling order, providing the court with names of witnesses, including clinical directors at the FCIs at La Tuna and El Paso; neurosurgeons Drs. Masel, Smith, Beach, and Willis; physicians assistants Berry, Brunus, and Dunigan of the FPC

3

in El Paso; and wardens Aguirre and Maldonado. He stated that Drs. Beach and Willis performed "two pre-incarceration surgeries on [him]" and that, therefore, they "could provide the court with [valuable] information on the etiology of [his] injuries and requisite standard of care."

On April 21, 2000, Garner filed a motion to proceed IFP. The record indicates that the district court did not formally rule on the motion to proceed in the district court IFP or grant Garner IFP status.[2]

On June 16, 2000, Garner filed a second motion to appoint counsel. He argued, among other things, that under 28 U.S.C. § 1915, the district court had the authority to appoint counsel in a civil case. The court treated the motion as a motion for reconsideration of the original denial of the appointment of counsel and denied it on July 18, 2000.

On July 28, 2000, Garner filed a motion to subpoena witnesses to appear in court on October 3, 2000, including Drs. Masel, Smith, Beach, and Willis; a motion for writ of habeas corpus ad testificandum; and a motion to depose the witnesses identified by

---

[2] After final judgment, the district court considered a motion by Garner to proceed IFP on his perfected appeal to this court, but, because Garner had already paid the appellate filing fee, the court considered the motion for the limited purpose of determining whether a transcript should be provided at government expense. The court found that Garner was eligible to proceed IFP on appeal, but denied the motion to proceed IFP and for a transcript on the ground that Garner had not presented a substantial question of law or fact.

the government in its proposed witness list, which included Drs. Masel, Beach, and Willis but not Dr. Smith.  That same day, the district court denied Garner's motion requesting the court to issue subpoenas, noting that "[i]t appears the Plaintiff is asking that nine witnesses, located in various parts of the United States, be subpoenaed at Government expense."  The district court found that "the motion fails to disclose the subject matter of the testimony of any of these proposed witnesses or the way in which such testimony would be material to his case" and therefore denied the motion without prejudice.

On August 8, 2000, the government objected to Garner's motion to depose the more than fifty witnesses identified in the Government's proposed witness list on the ground that the motion came too late and is unduly burdensome and moved for a protective order, and the district court referred the matter to a magistrate judge on August 9, 2000.  The magistrate judge granted the Government's motion for a protective order on August 23, effectively denying Garner's motion to depose.  The judge noted that the government "is not required to pay for discovery costs on behalf of an indigent party" and that Garner "has presented no evidence that would justify the exercise of any discretionary power the Court may have" where "[h]e submits only an extremely general request."[3]

_____

[3] The magistrate judge's order further observed that Garner's "request provides no indication of the nature of the testimony

5

On August 3, 2000, Garner filed a second motion to subpoena witnesses. In this motion, Garner set forth briefly the anticipated testimony of each witness. Most pertinent to the instant appeal are the following descriptions: (1) "Dr. Brian Willis will be called as a witness to testify to the fact that the condition of pseudoarthrosis warranted surgery, or at least, the attention of a neurosurgeon and that the defendant was negligent in not providing plaintiff with the proper care"; (2) "Dr. Beach will be called as a witness to testify to the fact that the defendant failed to give plaintiff treatment equal to the required Standard of Care for the treatment of pseudoarthrosis whereby causing damages to plaintiff"; (3) "Dr. Smith will be called as a witness to testify to the fact that the delayed union at C5-6 caused further damages to plaintiff and warrant treatment equal to the Medical Standard of Care"; and (4) "Dr. Masel will be called as a witness to testify to a statement he made that related his opinion that Pseudoarthrosis at C5-6 contributed significantly to the herniation of the disc at C6-7."

On August 17, 2000, the district court denied the motion, again without prejudice, on the ground that "it is not necessary to

sought, what, if any, relevance it may have, the importance of the expected testimony, what, if any, other means of discovery have been attempted to obtain this information, the proposed logistics for taking more than 50 depositions at a prison, the expense of such an endeavor, and, most importantly, what legal obligation exists that requires the United States to pay for his discovery." The judge concluded, "[i]n short, Plaintiff's request lacks both legal and factual substance."

rule on Plaintiff's motion at this time since the Government recently submitted a proposed witness list showing that it plans to call as potential witnesses all the individuals named in Plaintiff's motion." The district court stated that, "[i]f closer to the date of trial the Court learns that the Government will not call one of more of the witnesses in Plaintiff's motion, Plaintiff may renew his motion for subpoena of witness for the Court's consideration at that time."

On August 24, 2000, the government filed a motion to dismiss or for summary judgment. The government argued that Garner was unable to provide the expert testimony required to prove his medical malpractice claim and submitted in support of this contention the following evidence: 1) Garner's response to the government's first set of interrogatories, in which Garner stated that he had not employed an expert; 2) an excerpt of Garner's deposition, in which he stated that he had not hired an expert; and 3) affidavits from three doctors on the FPC medical staff who treated Garner and asserted that their actions comported with the applicable standard of care and that no act or omission on their part caused any injury to Garner. On September 11, Garner filed a response and a supplemental response, submitting in support statements of Drs. Smith, Beach, and Willis.

On September 18, 2000, Garner filed a third, renewed motion to subpoena witnesses, including the same information as in his prior motion. The district court did not expressly rule on this motion

7

prior to trial or prior to granting partial summary judgment for the government.

On September 22, 2000, in a written order ruling on summary judgment, the district court determined that Garner's complaint raised both medical malpractice and simple negligence issues. The court held that Garner had not provided the expert testimony required to prove two essential elements of his malpractice claim: (1) breach of the duty of care by the government's physicians and (2) that such breach was the proximate cause of his injuries. The court observed that Garner argued that he could prove the applicable standard of care with statements from three of his previous treating physicians, Drs. Beach, Willis, and Smith. The court noted, however, that the statements from the physicians did not even discuss a standard of care and did not indicate that the government's medical staff breached the applicable standard of care. The district court also reasoned that, because the statements were written before Garner entered the FPC in El Paso, they could not show that the FPC medical staff breached the applicable standard of care. The court also held that Garner failed to raise a fact issue as to causation. The court granted summary judgment in favor of the government as to the medical malpractice portion of the case only, declining to grant summary judgment as to the simple negligence portion against the wardens and clinical directors because neither party requested summary judgment on that issue.

The court conducted a bench trial as to the negligence portion of the case on October 3-4, 2000. During the trial, Garner reurged his motion to subpoena witnesses, arguing that Drs. Smith and Beach could testify as to the applicable standard of care. The court denied the motion, stating that "I can't think of any conceivable thing that they could testify to that would be material in this trial" and that the standard of care was no longer relevant because the court had granted summary judgment on the medical malpractice portion of the case and the only issue left in the case was "whether the personnel at FPC El Paso ... or FCI La Tuna denied you treatment or ... any instrumentation or appliances or equipment or anything of that kind that was necessary for the maintenance or treatment of your condition at that time."

After Garner rested his case, the court granted the government's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c). In its written order of October 4, 2000, the district court identified the remaining issues for trial after its grant of partial summary judgment: "(1) whether the Defendant's agents and employees had negligently deprived the Plaintiff of the use of a cervical collar or neck brace; (2) whether they were negligent in removing the medical restrictions placed on the Plaintiff and allowing him to return to regular duty[;] and (3) whether they were negligent in failing to refer him to a doctor specializing in neurology or neurosurgery for diagnosis and treatment." The court found that no reasonable trier of fact

would be convinced by a preponderance of the evidence that the agents and employees of the government were negligent or that negligence was a proximate cause of any injury or harm to Garner. Accordingly, the district court entered judgment for the government on October 4, 2000.

## II

We turn first to the district court's grant of summary judgment on Garner's medical malpractice claim. Garner argues that on the record before the district court, even without the benefit of the testimony Garner sought to obtain by subpoena, the district court erred in granting summary judgment. He contends that the statements of Drs. Smith, Willis, and Beach, offered in response to the government's summary judgment motion, reveal "that pseudoarthrosis required surgery to correct [and] makes it obvious that, in the presence of the condition of non-union at C5-6, a reasonable person would seek a neurosurgical consultation." He further contends that these physicians' "collective opinions represent the Standard of Care for the treatment of pseudoarthrosis."

We review a grant of summary judgment *de novo*, applying the same standard as the district court.[4] Under the FTCA, because the

---

[4] *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 257 (5th Cir. 2001).

10

alleged medical malpractice occurred in Texas, Texas law controls.[5] A plaintiff in a Texas medical malpractice action must prove four elements to establish liability: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) actual injury to plaintiff, and (4) . . . [that] the breach [was] a proximate cause of the injury."[6] Additionally, "Texas law places the burden of proof on the plaintiff to establish by expert testimony that the act or omission of the defendant physician fell below the appropriate standard of care and was negligent."[7] We have held that, "[w]hen state law requires a plaintiff to prove negligence by expert testimony, summary judgment can be granted where the defendant presents expert affidavits and the plaintiff presents no such affidavits."[8]

In this case, Garner was required to demonstrate by competent medical expert evidence that his treatment fell below the applicable standard of care. The district court held that Garner did not present competent evidence by a medical expert to counter the government's evidence and that Garner therefore failed to create a genuine issue of material fact regarding breach of duty.

---

[5] *Urbach v. United States*, 869 F.2d 829, 831 (5th Cir. 1989).

[6] *Id.*

[7] *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1020 (5th Cir. 1993).

[8] *Id.*

11

Here, the district court correctly reasoned that Garner did not prove the applicable standard of care by the statements of Drs. Beach, Willis, and Smith because 1) the "statements [do not] even discuss a standard of care, much less state that the FPC medical staff failed to meet that standard" and 2) "the statements . . . could not possibly show that the FPC medical staff breached the applicable standard of care because each of these statements were written before Garner entered the FPC in El Paso." On the summary judgment record before it, the district court did not err in granting summary judgment for the government on Garner's medical malpractice claims.[9]

### III

Garner argues that the district court abused its discretion and violated his right to due process in denying him the benefit of expert witnesses during the summary judgment proceeding and bench trial. He contends that the district court abused its discretion in denying his three motions to subpoena witnesses, particularly Drs. Smith, Willis, and Beach because these witnesses, the "three neurosurgeons who operated on him" (prior to his incarceration), would have provided expert testimony as to the standard of care, testimony which was essential for him to prove the elements of his

---

[9] To the extent that Garner argues that the district court abused its discretion in not allowing him the benefit of expert testimony prior to ruling on summary judgment, we discuss this issue below.

medical malpractice claim and relevant to his negligence claim at issue in the bench trial.[10]

The government contends that the district court did not abuse its discretion in refusing to issue subpoenas for the witnesses because Garner failed to tender the required witness fees and a party proceeding *pro se* and IFP is not entitled to have the witnesses' fees under 28 U.S.C. § 1821 waived. In his reply brief, Garner contends that the issue of the tendering of witness fees is "moot because the district court never mentioned witness fees" in denying the motions to subpoena.

Before turning to the district court's refusal of Garner's request for subpoenas, we address several preliminary matters. First, the district court's scheduling order required that the parties designate any "testifying experts" and submit a written summary of their expected testimony by April 25, 2000. Gardner did not designate Drs. Masel, Smith, Beach, and Willis as testifying experts. On the witness list filed March 30, Garner indicates that "Doctors Beach and Willis are the doctors who performed the two pre-incarceration surgeries on the plaintiff and therefor[e] could provide the court with valued information on the etiology of plaintiff's injuries and requisite standard of care." To the

---

[10] Garner's motions to subpoena witnesses requested that the witnesses be subpoenaed to appear on October 3, 2000, or, in his final motion, on October 2, 2000. The district court granted the government partial summary judgment prior to the bench trial but after Garner filed each of his three written motions to subpoena witnesses.

13

extent this could be liberally construed as a designation of Drs. Beach and Willis as testifying experts, Garner failed to provide a further, written summary of their expected testimony. Furthermore, in his March 29 answers to the government's interrogatories and at his July 28 deposition, Garner clearly stated that he had not hired an expert physician.

Second, Garner does not appeal the order granting the government's protective order against Garner's July 28, 2000 motion to depose, *inter alia*, Drs. Mazel, Beach, and Willis.[11] The record reflects that Garner never made another request to depose any of these potential witnesses or Dr. Smith.

Third, Garner never formally moved for the appointment of an expert, pursuant to Federal Rule of Evidence 706(a) or any other provision.[12] Garner's motions to subpoena and his responses to the

---

[11] We note that Garner's motion to depose did not identify any particular witness he needed to depose or the reason why it was important for him to obtain any witness's deposition testimony.

[12] Federal Rule of Evidence 706(a) provides:

(a) Appointment. The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may

14

government's motion for summary judgment may be read to indicate that he wished to obtain trial testimony from these doctors that would be in the nature of expert testimony, including "that the defendant was negligent in not providing plaintiff with the proper care" (Dr. Willis) and "that the defendant failed to give plaintiff treatment equal to the required Standard of Care for the treatment of pseudoarthrosis whereby causing damages to plaintiff" (Dr. Beach).

However, even if, apart from the issue of whether the district court abused its discretion in denying Garner's requests for subpoenas, we were to construe Garner's arguments on appeal as raising the issue of whether the district court erred in failing to appoint an expert, we would find no error.  Rule 706(a) does not apply to authorize the appointment of the experts which Garner sought because, beyond his motions to depose and to subpoena witnesses, Garner "never requested the appointment of an expert pursuant to Rule 706" and, to the extent his motions can be construed as requests for an expert, he "requested an appointment only for his own benefit," such that "Rule 706 is not applicable."[13]

---

be called to testify by the court or any party.  The witness shall be subject to cross-examination by each party, including a party calling the witness.

[13]  *Pedraza v. Jones*, 71 F.3d 194, 197 n.5 (5th Cir. 1995). Because Garner was never granted IFP status, a decision which he does not appeal, the prohibition on appointing an expert under 28 U.S.C. § 1915 is not relevant on this appeal.  *See id.* at 196-97.

15

We turn then to the denial of Garner's subpoena requests. We review a district court's refusal to issue a subpoena only for abuse of discretion.[14] We have held there is no abuse of discretion where a prisoner litigant did not state why he needed a witness's testimony and where the prisoner did not in fact need the testimony to prove his claim at trial.[15] So, too, there was no abuse of discretion where the witnesses' testimony would be "merely repetitious and cumulative of testimony already introduced."[16]

In his motions before us on appeal, Garner simply sought to subpoena Drs. Masel, Smith, Beach, and Willis to testify at trial on October 2 or 3, 2000. The district court's refusal of those requests was not, we conclude, an abuse of discretion insofar as Garner was without sufficient evidence in the form of expert witness reports, affidavits, or deposition testimony to survive summary judgment on his medical malpractice claim. The relief Garner sought in the motions which he appeals–the doctors' testimony at trial–would not have benefitted him in responding to the government's pretrial motion for summary judgment.

Furthermore, there is no abuse of discretion in the district court's denial of Garner's first motion to subpoena, which did not indicate the anticipated substance of or need for the testimony of

---

[14]  *Gibbs v. King*, 779 F.2d 1040, 1047 (5th Cir. 1986).

[15]  *See id.; see also Cupit v. Jones*, 835 F.2d 82, 86-87 (5th Cir. 1987).

[16]  *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985).

16

the witnesses at issue.  The district court also did not abuse its discretion in denying without prejudice the second motion to subpoena on the ground that the government itself might well call all of the witnesses Garner sought to subpoena.[17]

The district court's denial, by inaction, of Garner's third, renewed request for subpoenas and its express denial of his fourth request for subpoenas at trial require somewhat more discussion. Garner followed the terms of the district court's own order denying his second motion to subpoena by renewing his motion to subpoena witnesses at a time when it perhaps should have been clear to the court that the government would not call one of more of the witnesses.[18]  Garner noted on his third motion that he would "not have another opportunity to submit this witness list because he is in transit" to arrive at the court for trial in early October.  The record does not indicate that the district court took any action at this point to ascertain whether the government would be calling Drs. Masel, Smith, Beach, or Willis at trial, which would have obviated the need for subpoenaing any of these witnesses. Thereafter, at trial, Garner renewed his request for subpoenas of Drs. Smith and Beach a fourth and final time, arguing they could

---

[17]  In addition to Drs. Masel, Smith, Beach, and Willis, Garner sought to subpoena Drs. Leyva, Spiegler, Layumas, Payne, and O'Leary.  Drs. Leyva, Spiegler, and Layumas were all made available and testified at trial during Garner's case-in-chief.

[18]  In fact, the government did not call Drs. Masel, Smith, Beach, or Willis to testify at trial.

testify to the standard of care and, at least as to Dr. Smith, the history of his injury. The district court denied the request but agreed to consider the medical records from Dr. Smith for all purposes.

The district court's refusal to subpoena Drs. Masel, Smith, Beach, or Willis on the basis of these third and fourth requests only constitutes an abuse of discretion if the these witnesses' testimony at trial was materially necessary to prove Garner's simple negligence claim. As we have already indicated, Garner failed to take the other steps necessary to obtain expert testimony, affidavits, or reports from any of these physicians in time to preserve his medical malpractice claim from summary judgment. The fact that Garner filed his third motion to subpoena four days before the district court granted partial summary judgment is of no moment, since that motion turned on the evidence in the summary judgment record and not testimony which might come in at trial.[19]

---

[19] However, it is equally irrelevant, despite the government's argument on appeal, that Garner did not tender the witness fees to accompany the subpoenas he requested and that he was not entitled to have those fees waived. We have cited with approval one of our sister circuit's cases for the proposition that "an indigent litigant is [not] constitutionally entitled to subpoena an unlimited number of witnesses, including prisoners, without the payment of witness fees, and without a more substantial showing of need for the testimony of the requested witnesses." *Cupit*, 835 F.2d at 86 (citing *Cookish v. Cunningham*, 787 F.2d 1, 5 (1st Cir. 1986)). We have also recently cited with approval our sister circuits' consensus "that federal courts are not authorized to waive or pay witness fees on behalf of an IFP litigant." *Pedraza*,

In reviewing this claim of error, we must analyze the potential testimony of Drs. Masel, Smith, Beach, and Willis as lay witnesses, not experts. As we have noted, Garner failed to comply with the scheduling order's requirement that he designate any testifying experts and submit a written summary of their expected testimony by April 25, 2000. Moreover, even if Garner arguably designated Drs. Willis and Beach as testifying experts, he never provided any expert report as required by Federal Rule of Civil Procedure 26(a)(2)(B).[20] Indeed, Garner did not even first seek to subpoena or depose Drs. Masel, Smith, Beach, and Willis until July

71 F.3d at 196 n.4. Here, however, Garner was never granted IFP status, and he never sought to have witness fees waived. It would have been simple enough for the district court to grant his request conditioned on his payment of the required witness fees. Indeed, the district court's denial of four different requests for subpoenas did not turn on Garner's failure to tender any witness fees required under 28 U.S.C. § 1821.

[20] Federal Rule of Civil Procedure 26(a)(2)(B) provides:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

19

28, 2000, three months after the deadline for designating testifying expert witnesses.

In light of the deficiencies in Garner's simple negligence case on which the district court granted the government's motion for judgment as a matter of law pursuant to Rule 52(c), and based on our review of the record, we conclude that there was no abuse of discretion in the district court's denial of Garner's third and fourth requests for subpoenas of Drs. Masel, Smith, Beach, and Willis. At the bench trial, the only issues of simple negligence remaining included whether the government's agents and employees (1) negligently deprived Garner of the use of a cervical collar or neck brace, (2) negligently removed the medical restrictions placed on Garner and allowed him to return to regular duty, and (3) negligently failed to refer him to a doctor specializing in neurology or neurosurgery for diagnosis and treatment. Without testifying as experts, these doctors' potential testimony would not be material to Garner's proof of the first two negligence issues at trial.

Further, the district court granted judgment to the government on the third issue in part on the basis of the evidence showing that Garner was seen by Dr. Masel, a neurologist, in November 1998, at which time Dr. Masel found that surgery was not required, and again in February 1999, when Dr. Masel recommended considering offering Garner surgery "as soon as reasonably possible" but noted that it did "not appear to be an emergency" but rather "is

20

something that should be offered as a treatment alternative." In light of this undisputed evidence, in a simple negligence case, rather than a medical malpractice case, the potential testimony of Drs. Smith, Beach, or Willis, and certainly of Dr. Masel, would not have materially affected the district court's conclusion "that no reasonable trier of fact could find by a preponderance of the evidence that the agents and employees of the [government] were negligent in not referring [Garner] to a neurosurgeon sooner" because, upon referral to a neurosurgeon, Garner was found not to require surgery until a time shortly before he was transferred for purposes of receiving surgery. In short, the lay testimony of Drs. Smith, Beach, or Willis would not have materially affected the trial of Garner's simple negligence case.

Accordingly, we find no abuse of discretion and therefore affirm the district court's denial of Garner's motions to subpoena witnesses, particularly Drs. Masel, Smith, Beach, or Willis. We further conclude that there was no error in the district court's failure to appoint or otherwise provide Garner with an expert witness.

IV

Finally, Garner argues that the district court erred in denying his motions for appointment of counsel. Garner argues that the court had the authority under 28 U.S.C. § 1915(e) to appoint counsel and contends that the case was complex and required expert testimony.

21

We review a district court's denial of a prisoner litigant's motion for appointment of counsel for abuse of discretion only.[21] 28 U.S.C. § 1915(e)(1) provides that the district court "may request an attorney to represent any person unable to afford counsel." Under this provision, "the court may appoint an attorney to represent a litigant in federal court, but there is no automatic right to appointment of counsel,"[22] absent "exceptional circumstances."[23] We have held that, "[i]n evaluating whether the appointment of counsel is proper, the district court considers the type and complexity of the case, the litigant's ability to investigate and present the case, and the level of skill required to present the evidence."[24]

The district court denied Garner's first request on the grounds that the facts asserted by Garner were not unusual or complex and that, to the extent his claim had merit, he was qualified to represent himself. The court treated Garner's second motion as a motion to reconsider its denial of his first request. We have reviewed the record in this case, and we cannot say that the district court abused its discretion. The pleadings in the

---

[21] *Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998).

[22] *Castro Romero v. Becken*, 256 F.3d 349, 353-54 (5th Cir. 2001).

[23] *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (per curiam).

[24] *Castro Romero*, 256 F.3d at 354.

22

district court and briefs on appeal demonstrate Garner's ability to adequately represent himself, and we cannot disagree with the district court's assessment that Garner's case was neither unusual nor especially complex.  We therefore affirm the district court's denial of Garner's motions for appointment of counsel.

V

For the foregoing reasons, we AFFIRM the district court's judgment in favor of the government on Garner's FTCA medical malpractice and simple negligence claims.